COLE, C.J., delivered the opinion of the court in which GILMAN, J., joined. SUTTON, J. (pp. 261-69), delivered a separate dissenting opinion.
OPINION
COLE, Chief Judge.
Plaintiff-Appellant Stephen Koprowski is a former federal prisoner who was housed at Fort McCreary in Pine Knot, Kentucky. While imprisoned on November 23, 2009, Koprowski severely injured his back when he fell off a ladder while working in the food-service area of the prison. Koprowski alleges that various prison staff members were deliberately indifferent to his serious medical needs in the wake of this injury. He sued these individuals under the doctrine of Bivens v. *250 Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), for, among other things, violating his Eighth Amendment rights. The district court dismissed the claim on the ground that the Inmate Accident Compensation Act (“IACA”), 18 U.S.C. § 4126(c), a workers’ compensation scheme that covers federal prisoners injured during the codrse of their prison employment, is the exclusive means by which federal prisoner^ may receive monetary compensation for employment-related injuries.
We reverse. The Supreme Court has consistently reaffirmed its holding in Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980), that federal prisoners may bring Bivens claims under the Eighth Amendment against federal prison officials. Joining the three other circuits to have considered this issue, we conclude that the IACA does not displace such an action simply because the alleged Eighth Amendment violation occurred in the context of the prisoner’s employment. See Smith v. United States, 561 F.3d 1090 (10th Cir.2009); Bagola v. Kindt, 131 F.3d 632 (7th Cir.1997); Vaccaro v. Dobre, 81 F.3d 854 (9th Cir.1996). We affirm the district court’s dismissal of Koprowski’s other claims and remand for further proceedings.
I. BACKGROUND
On November 23, 2009, Koprowski was cleaning a fry hood in the food-service area of the prison when he fell off a step ladder and landed on his back. Koprowski lost feeling in his legs for a few minutes and experienced severe pain when he finally stood up. He had difficulty walking for the next several days, and the intense pain persisted even while lying down.
Koprowski alleges that the prison’s medical staff treated his injuries as minor and temporary, thereby causing him unnecessary pain and further aggravating his condition. He says the medical staff delayed taking x-rays and refused to perform a Magnetic Resonance Imaging (“MRI”) scan, which would have shown that he had broken his back. Koprowski also claims that prison staff denied him access to specialized care, surgery, and ambulatory aids. In one instance, he claims, staff threatened to send him to solitary confinement unless he surrendered a wheelchair he had been using; when he complied with their order to walk, the resulting pain and fatigue caused him to be bedridden for several hours. Another time, Koprowski allegedly was sent to a segregation unit— “the hole” — as punishment for being unable to walk to his work assignment.
About a week after his injury, when his pain had not abated, Koprowski’s back finally was x-rayed. The x-rays showed a wedge compression fracture of the L3 vertebra. A subsequent x-ray taken in January 2010 showed that the fracture had worsened. Koprowski alleges this injury resulted from his fall and has led to continued pain and permanent disability.
Koprowski complained about the prison’s treatment of his injury through its Administrative Remedy Procedure (“ARP”). He was also eligible to receive lost-time wages through the IACA for the work he missed as a result of the injury, and to seek compensation should he still have a “physical impairment” at. the time of his release. See 28 C.F.R. § 301.101.
In July 2011, Koprowski brought this Bivens suit against six prison officials, who are defendants-appellees here. Most germane to this appeal, Koprowski alleges the defendants violated his Eighth Amendment rights by acting with deliberate indifference to his serious medical needs. The district court granted the defendants’ mo *251 tion to dismiss, finding that the IACA is the exclusive vehicle by which a federal inmate may receive compensation for injuries suffered during the course of his employment in prison. The district court also dismissed Koprowski’s other claims, brought under the First, Fifth, and Fourteenth Amendments.
After the district court denied Koprow-ski’s post-trial motions, he timely appealed.
II. ANALYSIS
A. Jurisdiction and Standard of Review
As an initial matter, we must decide whether the defendants’ challenge is jurisdictional. The district court dismissed Koprowski’s Eighth Amendment claim for lack of subject-matter jurisdiction. We disagree. We have jurisdiction to adjudicate claims that arise under the Constitution, including Koprowski’s Eighth Amendment claim. See Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 66, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001) (citing 28 U.S.C. § 1331)., The relevant question here is whether judicial relief is available to Ko-prowski for his claim. See Davis v. Passman, 442 U.S. 228, 244, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979). We review the district court’s dismissal de novo, taking all well-pleaded allegations in the complaint as true. Left Fork Mining Co. v. Hooker, 775 F.3d 768, 773 (6th Cir.2014).
B. The Bivens Doctrine and the Eighth Amendment
In Bivens, the Supreme Court held that an individual injured by a federal officer’s violation of the Fourth Amendment may bring an action in federal court seeking money damages from the officer. Bivens, 403 U.S. at 397, 91 S.Ct. 1999. The Court held that the cause of action arose under the Fourth Amendment itself, and that a judicially created remedy was necessary to give the plaintiff a “remedial mechanism” to redress the violation of his constitutional right. Id. at 395-97, 91 S.Ct. 1999. The Court noted that creating a money-damages remedy for Fourth Amendment violations did not involve any “special factors counseling hesitation in the absence of affirmative action by Congress.” Id. at 396, 91 S.Ct. 1999. But the Court also acknowledged that Congress could limit such actions by creating “another remedy, equally effective in the view of Congress.” Id. at 397, 91 S.Ct. 1999.
The Supreme Court later extended the Bivens doctrine to allow the estate of a federal prisoner to bring a money-damages suit against federal officers who violated his Eighth Amendment right to be free from cruel and unusual punishment. Carlson, 446 U.S. at 18-23, 100 S.Ct. 1468. The prisoner in Carlson had died after an asthma attack due to prison officials being “deliberately indifferent” to his “serious medical needs.” See id. at 16-17 & n. 1, 100 S.Ct. 1468 (citing Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). The Court reiterated its discussion from Bivens that a cause of action for money damages arising directly under the Constitution could be defeated, either if “special factors counsel[ ] hesitation” or if “Congress has provided an alternative remedy.” Id. at 18-19, 100 S.Ct. 1468. The Court found, however, that no “special factors” counseled against allowing the claim because prison officials “do not enjoy such independent status in our constitutional scheme as to suggest that judicially created remedies against them might be inappropriate,” and that qualified immuni: ty “provides adequate protection” against disruptions in their official duties from these sorts of suits. Id. at 19, 100 S.Ct. 1468. The Court next considered whether the provision of the Federal Tort Claims Act (“FTCA”), 28 U.S.C. § 2680(h), creating a cause of action against the United *252 States for intentional torts committed by federal law enforcement officers, displaced the plaintiffs Eighth Amendment claim. Carlson, 446 U.S. at 19-20, 100 S.Ct. 1468. The Court found that “the congressional comments accompanying [the Act] made it crystal clear that Congress views FTCA and Bivens as parallel, complementary causes of action.” Id. Based on these considerations, the Court ultimately held that the plaintiff could pursue his Eighth Amendment claim.
C. Availability of a Bivens Remedy to Koprowski
Carlson provides the starting point for the case before us. A prisoner can state a claim under the Eighth Amendment against federal prison officials who have been deliberately indifferent to his serious medical needs. Carlson also provides, however, that Congress may displace that right if a statutory scheme provides an alternative remedy. 446 U.S. at 18-19, 100 S.Ct. 1468. Defendants argue that two statutory schemes, the IACA and the ARP, do just that.

1. The IACA

The Supreme Court has not expressly addressed whether the IACA is meant to exclude a prisoner’s ability to seek money damages from a prison official for a constitutional tort like the one claimed by Koprowski. Three other circuits have addressed the question,[1] and each of them has come out the same way: The IACA does not displace an Eighth Amendment Bivens claim. See Smith, 561 F.3d at 1102-03; Bagola, 131 F.3d at 637-45; Vaccaro, 81 F.3d at 857. These Circuits have noted the lack of a clear statement from Congress as to whether the IACA displaces Bivens claims. Smith, 561 F.3d at 1102; Bagóla, 131 F.3d at 639. They have found that the IACA’s scheme does not adequately protect prisoners’ Eighth Amendment rights because it does not deter unconstitutional conduct or provide a forum to address violations. Smith, 561 F.3d at 1103; Bagola, 131 F.3d at 639, 642-45; see Vaccaro, 81 F.3d at 857. And they saw no special factors to suggest that a Bivens remedy is inappropriate. Bago-la, 131 F.3d at 642-44. We agree and hold that the IACA does not displace Koprow-ski’s Eighth Amendment Bivens claim.
a. Explicit Statement
The first and potentially dispositive question in this case is whether Congress has spoken. If Congress has explicitly stated in either the statute or the legislative history that the IACA is meant to complement or to preclude a Bivens remedy, we will give effect to that intent. See Bush v. Lucas, 462 U.S. 367, 378, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983). Here, however, Congress is silent. Despite making technical amendments to the IACA in 1988 and 2004, Congress made no express statement in the text of the statute as to the interplay between the IACA and Bivens. Smith, 561 F.3d at 1101 n. 12 (“The [IACA] was amended ... without any Congressional comment on the relationship between that Act and Bivens claims.”). The parties have not pointed us to any relevant legislative history in this regard, and apparently none exists. We presume Congress was aware in 2004 of the Sev *253 enth and Ninth Circuits’ decisions allowing Bivens claims despite the IACA, see Bagola, 131 F.3d 632; Vaccaro, 81 F.3d 854, and therefore Congress’s decision not to speak on this issue might suggest some degree of acquiescence. See Cannon v. Univ. of Chi., 441 U.S. 677, 698-99, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979) (“[0]ur evaluation of congressional action ... must take into account its contemporary legal context.”); Lorillard v. Pons, 434 U.S. 575, 580, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978) (“Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change.”).
The closest we have to a direct statement from Congress is that it specified a cap on damages that can be paid out under the IACA: “In no event may compensation for [workplace-related] injuries be paid in an amount greater than that provided in” the Federal Employees’ Compensation Act (“FECA”), 5 U.S.C. 8101, et seq., the workers’ compensation system that covers federal employees. 18 U.S.C. § 4126(c). But this statement merely begs the question of which injuries fall within the scope of the IACA and therefore are subject to the cap. It is worth noting, however, that the FECA specifically contemplates the possibility of an injured government worker seeking compensation from someone other than the United States who is also liable for the injury, which may include a Bivens claim against a fellow employee for a violation of the injured worker’s constitutional rights. See 5 U.S.C. § 8132; Gustafson v. Adkins, 803 F.3d 883, 890 (7th Cir.2015) (collecting cases reaching this result, including Bates v. Harp, 573 F.2d 930, 934-35 (6th Cir.1978)).
Thus, the IACA’s cross-reference to the FECA does not exclude the possibility that a prisoner may have a cause of action against a prison official who injured him despite the operation of the IACA. Instead, the cross-reference supports the notion that Congress may have contemplated that the IACA and Bivens actions are complementary.
b. The IACA’s Structure
Without an explicit statement from Congress, we next look to the structure of the IACA to determine whether it is an “alternative, existing process for protecting the [constitutional] interest” at stake, thereby providing a “convincing reason for the Judicial Branch to refrain from providing a ... [Bivens ] remedy in damages.” Wilkie v. Robbins, 551 U.S. 537, 550, 127 S.Ct. 2588, 168 L.Ed.2d 389 (2007) (citing Bush, 462 U.S. at 378, 103 S.Ct. 2404). In deciding whether the IACA is meant to displace Koprowski’s Eighth Amendment Bivens claim, the slate is not blank. Two Supreme Court decisions lead us to conclude that a Bivens action remains available to prison workers like Koprowski.

i. Precedent

In United States v. Demko, 385 U.S. 149, 153, 87 /S.Ct. 382, 17 L.Ed.2d 258 (1966), the Court “accepted] the prison compensation law as an adequate substitute for a system of recovery by common-law torts,” and held that prison workers’ exclusive remedy for common-law torts was the IACA. As such, the IACA displaced any other common-law tort claims that could be brought against the United States under the Federal Tort Claims Act, which otherwise allows for such claims. Id. In coming to this conclusion, the Court recognized that workers’ compensation schemes (such as the IACA) “were the offspring of a desire to give injured workers a quicker and more certain recovery than can be obtained from tort suits based on negligence and subject to common-law *254 defenses to such suits.” Id. at 151, 87 S.Ct. 382 (emphasis added). Because the IACA and the FTCA protect against the same sort of harm, the IACA displaces the FTCA. Id. at 152-53, 87 S.Ct. 382; see also Vaecaro, 81 F.3d at 857. Demko thus stands for the unremarkable proposition that the IACA and FTCA are similar in the interests they protect.
But Carlson, which was decided over a decade after Demko, expressly distinguishes between common-law torts remedied by the FTCA and Eighth Amendment claims cognizable under Bivens. The Court analyzed the interests that the Eighth Amendment protects, as compared to the work that the FTCA does, and concluded: “Plainly FTCA is not a sufficient protector of the citizens’ constitutional rights.... ” Carlson, 446 U.S. at 23, 100 S.Ct. 1468; see also Bagola, 131 F.3d at 642 n. 15. As such, the FTCA is not meant to displace Bivens actions, and the two act in concert.
Taken together, Demko and Carlson make clear that the IACA and FTCA operate in one sphere (common-law torts), and Bivens operates in another (constitutional torts). Put another way, we know from the Supreme Court that the IACA and FTCA are similar, whereas claims under the FTCA and Bivens actions are dissimilar. Demko and Carlson thus lead us to conclude that the IACA does not displace Bivens actions for prison workers.

ii. The Workings of the IACA

Our own review of the IACA’s structure confirms this conclusion. The IACA authorizes the Attorney General to promulgate regulations creating a workers’ compensation scheme for federal prisoners who are injured during the course of their prison employment. See 18 U.S.C. § 4126(c); 28 C.F.R. § 301.101. After missing three consecutive days of work, prisoners are paid 75 percent of their lost wages for any additional work missed. 28 C.F.R. § 301.203. If the prisoner disagrees with the prison’s determination as to whether his injury was actually work-related, he may appeal through the ARP— the Bureau of Prisons’ (“BOP”) general grievance process. 28 C.F.R. § 301.205.
If the prisoner’s injury creates a “physical impairment” that still exists at the time the prisoner is released, then no earlier than 45 days before he is released the prisoner may file a claim to recover additional compensation; the amount recoverable is specified in the compensation schedule of the FECA, 5 U.S.C. § 8107. 28 C.F.R. § 301.314. The initial determination on this claim is made by an examiner. If the prisoner disagrees with the examiner’s decision, he may seek an evidentiary hearing before an Inmate Accident Compensation Committee. If still dissatisfied with the Committee’s decision, the prisoner may further appeal to the Chief Operating Officer of the federal prison system. See 28 C.F.R. §§ 301.303-.315. At no point during the process is blame assigned.
The no-fault nature of the IACA strongly suggests that it is an inadequate alternative to a Bivens action. As the Seventh Circuit neatly put it: The IACA does not “provide[] a forum where the allegedly unconstitutional conduct would come to light.” Bagola, 131 F.3d at 643. The prison-workers’ compensation scheme thus looks strikingly different from the alternative schemes the Supreme Court considered in Bush and Schweiker, two cases on which the defendants heavily rely. In Bush, the plaintiff, a NASA employee who alleged he had been demoted for publicly criticizing his superiors, was protected by an “elaborate” and “comprehensive” civil service system. Bush, 462 U.S. at 385-87, 103 S.Ct. 2404. This system allowed the plaintiff to litigate fully his First Amend *255 ment challenge to NASA’s employment action. Id. Similarly, the plaintiffs in Schweiker, who alleged that government officials had violated their due process rights by improperly denying their Social Security disability benefits, were able to expose publicly the actions of those officials, leading Congress to amend the disability benefits program specifically to address due process concerns. Schweiker v. Chilicky, 487 U.S. 412, 415-17, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988).
The IACA, by contrast, is a no-fault compensation scheme. It presupposes recovery without blame — after all, it is the Inmate Accident Compensation Act. Under the scheme, all that matters is the nature of the injury, not the underlying conduct. Thus, “the conduct that caused the work-related injury is not relevant and likely will not be exposed by the claim evaluation process.” Bagola, 131 F.3d at 644. As a result, the IACA, acting alone, “not only insulates prison officials who violate an individual’s constitutional rights from individual liability, ... it also shrouds their potentially unconstitutional conduct within a no-fault compensation system.” Id. For this reason, the Tenth Circuit followed the reasoning of Bagóla and noted, “there is very little deterrent effect for constitutional harms within the [IACA], and there is no alternative forum where the alleged constitutional violation could be addressed.” Smith, 561 F.3d at 1103.
The lack of accountability is important when determining whether an alternative scheme protects the constitutional interest at stake, thereby precluding a Bivens remedy. “The purpose of Bivens is to deter individual federal officers from committing constitutional violations.” Malesko, 534 U.S. at 70, 122 S.Ct. 515. “It is almost axiomatic that the threat of damages has a deterrent effect, surely particularly so when the individual official faces personal financial liability.” Carlson, 446 U.S. at 21, 100 S.Ct. 1468 (citation omitted). That is why, in FDIC v. Meyer, 510 U.S. 471, 485, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994), the Supreme Court held that a plaintiff cannot bring a Bivens action against a federal agency: the deterrent effect would be lost if a plaintiff could sue the relevant agency rather than the individual officer. By contrast, in Minneci v. Pollard, — U.S. -, 132 S.Ct. 617, 623-25, 181 L.Ed.2d 606 (2012), the Supreme Court held that the availability of state tort actions is sufficiently adequate to preclude a Bivens remedy against employees of a privately operated federal prison because prisoners can still bring money-damages suits against those employees. See id. at 625 (“[S]tate tort law remedies provide roughly similar incentives for potential defendants to comply with the Eighth Amendment....”).
In contrast, the IACA does not adequately deter unconstitutional conduct because prison officials have no skin in the game under the workers’ compensation scheme.[2] Of course, the prison officials have qualified immunity to shield them. *256 Still, “the threat of litigation and liability-will adequately deter federal officers for Bivens purposes no matter that they may enjoy qualified immunity, are indemnified by the employing agency or entity, or are acting pursuant to an entity’s policy.” Malesko, 584 U.S. at 70, 122 S.Ct. 515 (citations omitted).
At base, an Eighth Amendment money-damages suit and a run-of-the-mill IACA claim based on an accident in the workplace are fundamentally different. The two types of actions seek different damages for different harms arising under different theories from different defendants. See Vaccaro, 81 F.3d at 857. In an IACA claim, a prisoner seeks workers’ compensation from the employer (the United States) for an on-the-job injury, similar to the type any employee could suffer in the course of her employment. An Eighth Amendment action seeks something significantly different: compensation from a prison official for unnecessary pain that can be inflicted only on a prisoner by such an official. See Bagola, 131 F.3d at 645. Absent a Bivens remedy, a prisoner who is subject to such a gratuitous infliction of injury in the workplace could not seek redress for that constitutional injury. That prisoner can receive IACA damages for time missed from work, and for any permanent disability upon release. But the quintessential aspect of an Eighth Amendment claim— cruel and unusual punishment — would go unaddressed. That is not to say that the remedy offered by an alternative scheme must “be perfectly congruent” to a Bivens remedy, Minneci, 132 'S.Ct. at 625, or offer the same amount of compensation, see Schweiker, 487 U.S. at 425, 108 S.Ct. 2460. But for an alternative process to be adequate, it must “protect the constitutional interests at issue.” Minneci, 132 S.Ct. at 624. This, the IACA does not do.
One final point about workers’ compensation schemes helps to put all of this into context. Such schemes typically cover only accidents and do not prevent workers from bringing suit for intentional torts they suffer in the workplace. See Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 1, comment a (2016) (“The exclusivity of the workers’compensation system is limited, however, to accidental injuries; it does not apply if the employer has committed an intentional tort against the employee.”). Additionally, workers’ compensation laws generally recognize that certain wrongs can be remedied outside of the scheme without disrupting the scheme’s effect. Id. The existence of the IACA, therefore, does not, in and of itself, suggest that prisoners should be prevented from seeking redress when prison officials go beyond mere negligence and violate the prisoners’ Eighth Amendment rights.

2. The ARP

The defendants also contend that prisoners have an additional avenue for relief to vindicate their constitutional rights: the ARP, BOP’s grievance process that “allow[s] an inmate to seek formal review of an issue relating to any aspect of his [or] her own confinement,” including allegations of unconstitutional conduct by prison officials. 28 C.F.R. § 542.10(a). Once the ARP’s grievance procedure has been completed, the inmate may file suit in federal court seeking injunctive relief. See Malesko, 534 U.S. at 74, 122 S.Ct. 515.
But the ARP, which has been in effect for nearly four decades, see 44 Fed. Reg. 62,248-51 (Oct. 29, 1979), did not affect the Supreme Court’s conclusion in Carlson, nor the decisions of the Seventh, Ninth, and Tenth Circuits. More to the point, since Carlson, the Supreme Court has explicitly held that the ARP does not dis *257 place a Bivens remedy because it is not an effective substitute for a money-damages action. McCarthy v. Madigan, 503 U.S. 140, 151, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992), superseded in part on other grounds by statute, Prison Litigation Reform Act of 1995, Pub. L. 104-134, 110 Stat. 1321-71. Instead, in McCarthy the Supreme Court once again reaffirmed Carlson’s holding that prisoners may bring Eighth Amendment claims against prison officials despite the existence of the ARP. See id.

3. Special Factors

Having determined that the IACA is not an adequate alternative process to protect a prisoner’s Eighth Amendment rights, the final question is whether any “special factors counsel[ ] hesitation” against allowing a Bivens suit to proceed. Wilkie, 551 U.S. at 550, 127 S.Ct. 2588 (quoting Bush, 462 U.S. at 378,103 S.Ct. 2404). These special factors exist to help the court “make the kind of remedial determination that is appropriate for a common law tribunal.” Id. (quoting Bush, 462 U.S. at 378, 103 S.Ct. 2404). That is, the court must “weight ] reasons for and against” allowing a Bivens action in this context. Id. at 554,127 S.Ct. 2588.
In Carlson, the Supreme Court explicitly found that no special factors suggested that an Eighth Amendment Bivens remedy would be inappropriate. 446 U.S. at 19, 100 S.Ct. 1468. First, federal prison officials “do not enjoy such independent status in our constitutional scheme as to suggest that judicially created remedies against them might be inappropriate.” Id. Second, qualified immunity protects federal prison officials such that the availability of a Bivens remedy would not overly interfere with their ability to do their jobs. Id.
The defendants want to re-litigate the second point, but Carlson has already closed the door on their arguments. Even though subjecting prison officials to personal liability through Bivens suits “might inhibit” prison officials in “their efforts to perform their official duties,” qualified immunity “provides adequate protection.” Id. at 19, 100 S.Ct. 1468. The Supreme Court’s conclusion has become even more pertinent over time because the qualified-immunity doctrine has expanded to give more protection to government officers. See Bagola, 131 F.3d at 638 & n. 12 (contrasting the pre-Carlson case of Butz v. Economou, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), with the later case of Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Furthermore, the defendants have not presented any evidence of their concerns actually manifesting themselves in the three circuits that already allow Bivens suits despite the existence of the IACA.
In sum, the defendants have not put forth any new special factors for us to consider. And we find no special factors that require us to preclude Bivens relief here.
A The Dissent
The dissent notes that, since Carlson, the Supreme Court has increasingly expressed skepticism about expanding the Bivens doctrine to new situations. See, e.g., Schweiker, 487 U.S. at 421, 108 S.Ct. 2460; see also Malesko, 534 U.S. at 75, 122 S.Ct. 515 (Scalia, J., concurring). But this case does not present an opportunity to expand Bivens. Cf., e.g., Engel v. Buchan, 710 F.3d 698, 705 (7th Cir.2013) (extending Bivens into the “new” context of claims alleging violations of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)). For more than 30 years, the Supreme Court has repeatedly affirmed the holding of Carlson: prisoners may bring money-damages actions under the Eighth *258 Amendment against federal prison officials.
In Malesko, 534 U.S. at 71-72, 122 S.Ct. 515, for example, the Supreme Court declined to allow Bivens suits against private corporations operating halfway houses under contract with the BOP, but still recognized that “a federal prisoner in a BOP facility ... may bring a Bivens claim against the offending individual officer.” Similarly, in Minneci, 132 S.Ct. at 623-24, the Supreme Court held that a prisoner could not bring an Eighth Amendment claim against employees of a privately operated federal prison, but in so doing reaffirmed Carlson by distinguishing the reasons why a prisoner in a prison operated by the federal government could bring such a claim. Here, Koprowski’s claim is the same as the claim that the Supreme Court allowed in Carlson: an Eighth Amendment claim against officers working in a prison run by the federal government.
The dissent looks at this case from the opposite direction. It presumes no Bivens remedy is available despite Carlson, and then asks whether we should create one, with a heavy presumption against doing so. But only the Supreme Court may overrule its own precedents, and we are bound by its decision “until such time as the Court informs [us] that [we] are not.” Hicks v. Miranda, 422 U.S. 332, 345, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975) (internal quotation marks and citation omitted). Although some of Carlson’s analytical framework has been altered by later decisions, its core holding allowing just this sort of suit binds us. See Minneci, 132 S.Ct. at 623-24.
In addition to presuming that no Bivens remedies should exist, the dissent’s “special factors” analysis presumes that Congress balanced the policy considerations at play and intended for the IACA to displace Carlson. We agree that Congress is the better institution for balancing competing policy concerns, and that is why we defer to its expressed judgments. See Wilkie, 551 U.S. at 562, 127 S.Ct. 2588. But, as we’ve explained, Congress’s intent to displace Bivens actions with the IACA is not apparent. Moreover, if Congress’s intent were clear, we would not need to engage in the special-factors analysis at all.
D. Absolute Immunity
Beyond disagreeing with our Bivens analysis, the dissent treks an even more extreme path. Relying on Hui v. Castaneda, 559 U.S. 799, 130 S.Ct. 1845, 176 L.Ed.2d 703 (2010), the dissent argues that the IACA not only displaces the Eighth Amendment Bivens claim, but also grants prison officials absolute immunity from suit. In Hu% the Supreme Court held that a specialized provision within the FTCA making certain remedies against the United States “exclusive of any other civil action or proceeding by reason of the same subject-matter against” certain public-health employees, 42 U.S.C. § 233(a), effectively grants absolute immunity to those specific public-health employees. See Hui 559 U.S. at 805-06, 130 S.Ct. 1845. The Court looked to “[t]he breadth of the words ‘exclusive’ and ‘any,’ ” as well as the “inclusive reference to all civil proceedings arising out of ‘the same subject-matter’ ” to reach this conclusion. See id. at 806, 130 S.Ct. 1845.
Before addressing the merits of this argument, we note that neither side has raised absolute immunity as an issue in this case.[3] “The premise of our adversarial system is that appellate courts do not sit as self-directed boards of legal inquiry and research.” Carducci v. Regan, *259 714 F.2d 171, 177 (D.C.Cir.1983) (Scalia, J.). Instead, “we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.” Greenlaw v. United States, 554 U.S. 237, 243, 128 S.Ct. 2559, 171 L.Ed.2d 399 (2008). “Only in exceptional cases or particular circumstances or when the rule would produce a plain miscarriage of justice do we exercise our discretion to entertain arguments not raised before the district court.” Rice v. Jefferson Pilot Fin. Ins. Co., 578 F.3d 450, 454 (6th Cir.2009) (internal citation and quotation marks omitted). Accordingly, we would decline to address the merits of the absolute-immunity issue even if the dissent were correct on the merits. That said, we disagree with the dissent.
The IACA is a bare-bones statute devoid of the sweeping language of exclusivity present in 42 U.S.C. § 233(a), the statute at issue in Hui. It provides only that the Attorney General may promulgate regulations to compensate inmates for workplace injuries. See 18 U.S.C. § 4126. There is no indication that Congress intended to grant absolute immunity to prison officials through the IACA. Cf. Carlson, 446 U.S. at 20, 100 S.Ct. 1468 (“Congress follows the practice of explicitly stating when it means to make FTCA an exclusive remedy.” (citing, among other statutory provisions, 42 U.S.C. § 233(a))). “Since the statute on its face does not provide for any immunities, we would be going far to read into it an absolute immunity....” Malley v. Briggs, 475 U.S. 335, 342, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).
Having no statutory support, the dissent instead relies on the Supreme Court’s use of the word “exclusive” in Demko. First, as we have already explained, Demko was discussing a different type of injury. We agree with the dissent that the IACA is “the exclusive remedy” for prisoners seeking compensation from the United States for common-law torts suffered in the course of their workplace injuries; those prisoners may not also bring claims under the FTCA. See Demko, 385 U.S. at 152, 87 S.Ct. 382; Vaccaro, 81 F.3d at 857; cf. Saltsman v. United States, 104 F.3d 787, 790 (6th Cir.1997) (similarly holding that the “exclusive” nature of the FECA’s workers’ compensation scheme precludes a simultaneous action against the United States under the FTCA). But this statement from the Supreme Court regarding the interplay between the IACA and the FTCA with respect to claims against the United States fails to demonstrate that Congress intended to grant absolute immunity to federal prison officials.
Moreover, the use of the word “exclusive” in one of the promulgated regulations does not alter our view. The regulation cited by the dissent, 28 C.F.R. § 301.319, speaks specifically to the exclusivity of the IACA with respect to claims that could otherwise be brought under the FTCA. That regulation cites Demko for the proposition that any prisoner who has an IACA claim is “barred from recovery under the [FTCA].” Id. Thus, the regulations do no more than reiterate the holding of Demko.
Finally, the official asserting absolute immunity has the burden of showing that immunity is justified for any particular function, and “[t]he presumption is that qualified immunity is sufficient to protect government officials in the exercise of their duties.” Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 432 n. 4, 113 S.Ct. 2167, 124 L.Ed.2d 391 (1993) (citing Burns v. Reed, 500 U.S. 478, 486-87, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991)). To hold that executive officers have absolute immunity, despite making no argument for it and having no statement from Congress intending such a result, would undermine the historically limited application of abso *260 lute immunity. We respectfully decline the dissent’s unsolicited invitation to travel down such a path.
E. Other Constitutional Claims
Having found that Koprowski’s Eighth Amendment claim should not have been dismissed, we briefly address the dismissal of Koprowski’s other Bivens claims alleging violations of his First, Fifth, and Fourteenth Amendment rights. We affirm the district court’s dismissal of these claims.
Koprowski alleges that the defendants retaliated against him for complaining about his medical care, thereby violating his First Amendment rights. See Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir.1999) (en banc). The district court dismissed this claim because Koprowski had failed to exhaust his administrative remedies. See 42 U.S.C. § 1997e(a). Ko-prowski makes vague assertions in this appeal that he could not exhaust his administrative remedies because he feared further retaliation, but his repeated informal complaints to prison staff about his medical care suggest otherwise. See Sarah v. Bradley, 66 Fed.Appx. 562, 563 (6th Cir.2003). Because Koprowski has not shown a reason to excuse his failure to exhaust his administrative remedies, we affirm the dismissal of this claim.
Koprowski’s complaint also alleges that the defendants’ inadequate medical care violated his due process and equal protection rights under the Fifth and Fourteenth Amendments. Koprowski has not specifically addressed these claims on appeal, and has therefore forfeited them. See Radvansky v. City of Olmsted Falls, 395 F.3d 291, 311 (6th Cir.2005).
III. DISCOVERY AND POST-TRIAL MOTIONS
After the district court dismissed Ko-prowski’s claims, he filed: (1) a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e), raising discovery-related issues, and (2) motions to amend his complaint pursuant to Federal Rule of Civil Procedure 15(a). The district court denied these motions. We review these decisions for an abuse of discretion. Greenberg v. Life Ins. Co. of Va., 177 F.3d 507, 522 (6th Cir.1999).
First, the district court did not abuse its discretion in denying Koprow-ski’s motion to amend his complaint to add claims after judgment had already been entered against him. When a motion to amend a complaint follows a judgment against the plaintiff, the need to protect the finality of judgments requires that the plaintiff “shoulder a heav[y] burden” and “provide a compelling explanation” to reopen the case. See Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv., 616 F.3d 612, 616-17 (6th Cir.2010). The district court found that the claims Koprowski sought to add were based on facts he had known both when he filed his original complaint and when he twice amended the complaint during the litigation. We agree that there was no compelling reason to allow a post-judgment amendment to the complaint under these circumstances.
Second, Koprowski’s Rule 59(e) motion for reconsideration renewed a previously raised argument that the defendants had failed to serve him with a copy of the medical records that were attached to the defendants’ motion to dismiss. On reconsideration, the district court described defense counsel’s actions in failing to turn over these documents as “disconcerting,” and concluded that defense counsel had “acted improperly” in certifying that he had served those records when in fact he had not. Nevertheless, the district court denied the Rule 59(e) motion because Ko-prowski’s claims had been dismissed on *261 purely legal grounds, and therefore the failure to turn over the records did not prejudice his case. Given our decision here that Koprowski’s Eighth Amendment claim is legally viable, we leave it to the district court on remand to determine the effect of the government’s failure to serve these documents.
IV. CONCLUSION
We reverse the dismissal of Koprowski’s Eighth Amendment Bivens claim. The IACA does not displace this otherwise available claim just because the alleged unconstitutional conduct occurred in the context of a prison workplace injury. We affirm the dismissal of Koprowski’s other claims. Finally, we remand the case for further proceedings consistent with this opinion.
DISSENT

. We have held in three summary, unpublished cases that the IACA precludes any Eighth Amendment claims arising from medical treatment related to a prison workplace injury. See Springer v. United States, 229 F.3d 1154, 2000 WL 1140767 (6th Cir.2000) (table); Walls v. Holland, 198 F.3d 248, 1999 WL 993765 (6th Cir.1999) (table); Fraley v. Dep’t of Justice, 113 F.3d 1234, 1997 WL 225495 (6th Cir.1997) (table). However, unpublished opinions do not bind us. See 6 Cir. R. 32.1.

. Furthermore, not only would displacing a Bivens remedy in these circumstances fail to deter unconstitutional conduct, it could potentially create a moral hazard. Once again, federal prison officials are generally subject to Eighth Amendment money damages claims under Carlson. If we were to decide that the IACA displaces this otherwise-available Bivens remedy, we would have effectively carved out one area of prison life where personal liability cannot attach. The message to prison officials would be clear: if you want to harm a prisoner and get away scot-free, just do it while he's at work. Congress can tell us that that was its intent but, absent such an explicit statement, this troubling result suggests to us that the IACA as currently designed would not adequately protect prisoners’ Eighth Amendment rights.

. The defendants asserted a defense of qualified immunity in the district court but have not raised it here. (See Motion to Dismiss, R. 60-1, PagelD 1999-2001.)