RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 20a0041p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

QUALITY ASSOCIATES, INC.,

*Plaintiff-Appellant*,

*v.*

No. 19-3137

THE PROCTER & GAMBLE DISTRIBUTING LLC; YANNIS
SKOUFALOS;  PATRICK  PAOLINO;   ELIZABETH  RADKE;
MICHELLE EGGERS,

*Defendants-Appellees*.

─────────────────

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 1:18-cv-00075—Timothy S. Black, District Judge.

Argued:  October 17, 2019

Decided and Filed:  February 10, 2020

Before:  MOORE, McKEAGUE, and GRIFFIN, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:**  William B. Fecher, STATMAN, HARRIS & EYRICH, LLC, Cincinnati, Ohio, for
Appellant.  Eric K. Combs, DINSMORE & SHOHL, LLP, Cincinnati, Ohio, for Appellees.
**ON BRIEF:**  William B. Fecher, STATMAN, HARRIS & EYRICH, LLC, Cincinnati, Ohio, for
Appellant.  Eric K. Combs, DINSMORE & SHOHL, LLP, Cincinnati, Ohio, for Appellees.

MOORE, J., delivered the opinion of the court in which McKEAGUE, J., joined.
GRIFFIN, J. (pp. 10–12), delivered a separate dissenting opinion.

_____

**OPINION**

_____

KAREN NELSON MOORE, Circuit Judge.  In February 2018, Quality Associates, Inc. ("QAI") sued Procter & Gamble Distributing LLC ("P&G") in Ohio federal court for breaking a contract with it in a racially discriminatory manner.  *See* 42 U.S.C. § 1981.  But the problem was, P&G had already sued QAI in Ohio state court over the same contractual dispute underlying QAI's § 1981 claim, and that litigation was still ongoing.  So P&G moved to dismiss QAI's federal suit, arguing that its § 1981 claim was a compulsory counterclaim to the state litigation, *see* Ohio Civ. R. 13(A), and thus needed to be brought in that proceeding.  The district court agreed and accordingly dismissed QAI's suit.  We conclude, however, that a federal court cannot enforce a *state* compulsory-counterclaim rule against a *federal* litigant while the relevant state litigation is still pending.  For this reason, we **REVERSE** the district court's judgment and **REMAND** for further proceedings consistent with this opinion.

## I.  BACKGROUND

### A.  The Parties' Longstanding Business Relationship Sours

QAI is a Cincinnati-based, minority-owned business that engages in a variety of commercial activities, ranging from designing manufacturing plants to assembling retail "point-of-sale displays."  R. 1 (Federal Compl. ¶¶ 13–16) (Page ID #6).  For decades, it had a "flourishing and rewarding relationship" with P&G.  *Id*. (Page ID #2).

In 2015, however, P&G replaced its existing QAI liaisons with a new set of managers, specifically, individual defendants Yannis Skoufalos, Patrick Paolino, Elizabeth Radke, and Michelle Eggers.  *Id*. ¶¶ 22–23 (Page ID #7).  In the months following this change in management, QAI alleges, P&G engaged in demeaning and racially biased behavior toward QAI's leadership and employees, such that QAI could not adequately perform its end of the then-existing contract between the companies, called the "Purchase Agreement."  More specifically, QAI alleges, P&G's new team "t[ook] over QAI's business and operations" (and thereby "increased" QAI's "costs"), treated non-minority competitors to QAI far better than it treated

QAI, and even "allow[ed]" its employees "to make disparaging comments to and about QAI, its management and its employees." *Id.* ¶ 89 (Page ID #16).

Worse yet, QAI asserts, in February 2016 P&G "forced" QAI to enter into a "Termination Agreement" that essentially "terminated" the Purchase Agreement, and, by extension, the parties' business relationship. *Id*. ¶¶ 37, 97 (Page ID #9, 18). Indeed, QAI continues, the Termination Agreement was "so unfavorable" to QAI that it resulted in QAI's "liquidation." *Id*. And, again, according to QAI, P&G took this action against it for racially biased reasons.

## B.  The State-Court Litigation (Part One)

QAI, however, was not the only one who believed that the parties' crumbling business relationship was tainted with illegality. Rather, in early 2017, P&G accused QAI of breaching a contract related to the Termination Agreement, called the "M2K Agreement," allegedly in retaliation for P&G not paying QAI outstanding invoices owed under the Termination Agreement. Consequently, on January 25, 2017, P&G sued QAI in Ohio state court for breach of contract and injunctive relief.

QAI timely answered and asserted counterclaims. In its pleading, QAI raised many of the allegations detailed above, namely, that P&G's "one-side[d] decisions and interference [with QAI's business]" caused "QAI's financial condition" "to deteriorate," and that, eventually, P&G's actions "forced" QAI to sell its assets "well below what [those] assets were worth." QAI First State Court Counterclaim ¶¶ 15–17 (P&G App'x at 188). However, despite referencing some of P&G's allegedly racist behavior, *see, e.g.*, *id*. ¶¶ 2, 6–7 (P&G App'x at 186–87), QAI did *not* include a § 1981 claim in its pleading, or any other claim based on racial discrimination. Rather, QAI asserted simply (1) a breach of contract claim under the Termination Agreement (with respect to approximately $2.5 million in allegedly unpaid invoices), and (2) a declaratory judgment claim under the M2K Agreement (with respect to the proper amount QAI was to be paid under that agreement).

**C. The Federal-Court Litigation**

Then, on February 1, 2018, this hitherto-straightforward contract litigation took an odd procedural turn. That is, on that date, QAI (now represented by different counsel) filed a stand-alone § 1981 claim against P&G in Ohio *federal* court. And, notably, QAI's federal complaint contained many of the same allegations set forth in its state-court counterclaim, albeit with a greater emphasis on P&G's allegedly racist acts.

P&G promptly moved to dismiss QAI's federal complaint, asserting that QAI's suit failed either because QAI released and waived its § 1981 claim against P&G through the "release" and "final settlement" provisions of the Termination Agreement, or because QAI's § 1981 claim was a "compulsory counterclaim" to the ongoing state-court litigation and thus needed to be resolved in that proceeding. *See* Ohio Civ. R. 13(A) ("A pleading *shall* state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim . . .") (emphasis added); *Rettig Enters., Inc. v. Koehler*, 626 N.E.2d 99, 102–03 (Ohio 1994) (holding that a claim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim" if it is "logically related to the opposing party's claim") (citation omitted).

The district court agreed with P&G's second ground for dismissal, *i.e.*, the compulsory-counterclaim argument, and accordingly granted P&G's motion to dismiss. *See Quality Assocs., Inc. v. Procter & Gamble Distrib.*, *LLC*, 2019 WL 340472, at *5 (S.D. Ohio Jan. 28, 2019) (finding that QAI's § 1981 claim was "logically related to the claims in the State Court Litigation" because "the claims involve many of the same factual issues" and because "they will both require interpretation of the Purchase Agreement and the Termination Agreement"). As a result, the district court did not consider P&G's other argument for dismissal, *i.e.*, the waiver-and-release argument. *Id.* at *6 n.6.

QAI timely appealed the district court's judgment of dismissal.

**D. The State-Court Litigation (Part Two)**

In a yet another odd procedural twist, however, around the same time that QAI launched its appeal in this court, it requested permission to add a § 1981 claim to its *state*-court counterclaim; the claim was identical to QAI's (then-dismissed) federal claim. *See* QAI Proposed Second Am. Counterclaim (QAI App'x at 116-34). P&G opposed the motion.

The state trial court entertained oral argument, and, on April 16, 2019, denied QAI's request. *See* State Court Order (P&G App'x at 297). The state court reached this decision for two reasons: "(a) QAI's claims under 42 U.S.C. § 1981 asserted in the proposed Second Amended Counterclaim were compulsory counterclaims that should not be added to the case at this stage," and (b), even if the claims could be added as a matter of procedure, "QAI released its claims . . . by way of the release contained in the Termination Agreement between the parties." *Id*. Accordingly, the court ruled, "the filing of the Second Amended Counterclaim would be futile." *Id*.

Shortly thereafter, the parties filed their federal appellate briefs. Per the publicly accessible docket, the state litigation remains ongoing.[1]

## II. DISCUSSION

On appeal, QAI argues that the district court erred by construing its § 1981 claim as a compulsory counterclaim, subject to Ohio Rule of Civil Procedure 13(A), because the claim is purportedly not "logically related" to the contract claims at issue in the state-court proceeding. Appellant's Br. at 13. In response, P&G claims that QAI's appeal fails either because the state court's April 16 order rejected QAI's § 1981 claim on the merits—therefore precluding QAI from contending otherwise in this court—or because the claim is a compulsory counterclaim under Ohio law. P&G also raises the waiver-and-release defense it raised in the district court, and again (successfully) in the state trial court.

---

[1]*See Procter & Gamble Distrib. LLC v. Quality Assocs., Inc.*, No. A-17-00465 (Hamilton Cty. Court of Common Pleas), *available at* https://www.courtclerk.org/data/case_summary.php?sec=hist ory&casenumber=A+1700465&court%5BCCV%5D=on&submit.x=24&submit.y=13 (last accessed January 10, 2020).

Although we agree with P&G and the district court that QAI's § 1981 claim is analytically best classified as a compulsory counterclaim to the state-court proceeding, we disagree that that fact alone subjects QAI's claim to dismissal. Rather, we hold, because a federal court cannot enforce a state compulsory-counterclaim rule against a federal litigant outside the preclusion context, and because QAI's claim is not yet precluded here (because the state court has not yet entered a final judgment), the district court lacked authority to base its judgment of dismissal on this ground. Consequently, we reverse and remand.**[2]**

As an initial matter, we must explain why a federal court cannot enforce a state compulsory-counterclaim rule against a federal litigant unless it is part and parcel of a preclusion ruling. After all, one might ask, if a plaintiff files a claim in federal court that plainly should have been brought as a counterclaim in a state litigation, why should it matter whether the claim is precluded? The purpose of Ohio's compulsory-counterclaim rule is "to avoid a multiplicity of actions and to achieve a just resolution by requiring in one lawsuit the litigation of all claims arising from common matters." *Rettig*, 626 N.E.2d at 103. Allowing a federal court to enforce the rule, irrespective of procedural posture, seems to advance that purpose. In fact, one might note, had the parties' ongoing litigation been in federal court, rather than state court, federal law would have almost certainly provided the district court a basis on which to dismiss, consolidate, stay, or transfer the later-filed suit. *See, e.g.*, *Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 789 (6th Cir. 2016) (discussing the "first-to-file" rule); 6 Arthur R. Miller, Mary Kay Kane, and A. Benjamin Spencer, Federal Practice and Procedure § 1418 (3d ed. 2019) (discussing various "flexible procedures" available to federal courts dealing with duplicative claims filed in other federal courts). Why should the result be any different just because one litigation is in state court and the other is in federal court?

---

**[2]**In so ruling, we acknowledge that neither party raised the question of a federal court's power to enforce a state compulsory-counterclaim rule in its briefing. However, because this legal issue is an antecedent and outcome-dispositive one, and because it implicates important considerations of federal-court authority, we exercise our discretion to address it. *See Harris v. Klare*, 902 F.3d 630, 635–36 (6th Cir. 2018) ("'Ordinarily an appellate court does not give consideration to issues not raised below.' . . . This rule is not absolute, however, and it is within the ambit of our discretion to entertain questions not raised below.") (quoting *Hormel v. Helvering*, 312 U.S. 552, 556 (1941)); *see also U.S. Nat'l Bank of Oregon v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 447 (1993) ("[A] court may consider an issue 'antecedent to . . . and ultimately dispositive of' the dispute before it, even an issue the parties fail to identify and brief") (quoting *Arcadia v. Ohio Power Co.*, 498 U.S. 73, 77 (1990)).

At least two factors explain the differential treatment.  First, in contrast to the purely federal context, there is no statute or equitable doctrine authorizing a federal court to enforce state compulsory-counterclaim law or otherwise manage duplicative state-federal litigation.  *See* Miller, Federal Practice and Procedure § 1418; *see also Handy v. Shaw, Bransford, Veilleux & Roth*, 325 F.3d 346, 350–52 (D.C. Cir. 2003) (discussing state-federal distinction); *Smart v. Sunshine Potato Flakes, LLC*, 307 F.3d 684, 687 (8th Cir. 2002) (same).  Unsurprisingly, then, we have "enforced" such law only by way of preclusion doctrine.  *See, e.g.*, *Hutchison v. Parent*, 773 F. App'x 288 (6th Cir. 2019); *Hapgood v. City of Warren*, 127 F.3d 490 (6th Cir. 1997).  But, for the reasons explained below, P&G cannot invoke preclusion here.  So, in dismissing QAI's claim strictly on the basis of Ohio Rule of Civil Procedure 13(A), the district court exercised power that it did not have.[3]

Second, as the Supreme Court has recognized, "state-federal concurrent jurisdiction" is different than "wholly federal concurrent jurisdiction" because federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them."  *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).  Thus, in the state-federal concurrent jurisdiction context, "the pendency of an action in [a] state court" generally is considered "no bar to proceedings concerning the same matter in the Federal court having jurisdiction."  *Id.* at 817 (citation omitted); *cf. RSM Richter, Inc. v. Behr Am., Inc.*, 729 F.3d 553, 557–58 (6th Cir. 2013) (emphasizing that "the mere pendency of a state-court case concerning the same subject matter as a federal case is not reason enough to abstain") (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005)).  Indeed, as the Court put it nearly a century ago, in *Penn General Casualty Co. v. Commonwealth of Pennsylvania ex rel. Schnader*, "[w]here the judgment sought is strictly *in personam*, for the recovery of money or for an injunction compelling or restraining action by the defendant, both a state court and a federal court having concurrent jurisdiction may proceed with the litigation, at least until judgment is

---

[3]To be sure, when confronted with certain strains of duplicative state-federal litigation, a district court does have the power to *abstain* from exercising jurisdiction, per *Colorado River* abstention doctrine.  *See, e.g.*, *Healthcare Co. v. Upward Mobility, Inc.*, 784 F. App'x 390 (6th Cir. 2019) (affirming abstention in contract dispute); *Preferred Care of Delaware, Inc. v. VanArsdale*, 676 F. App'x 388 (6th Cir. 2017); *see also Handy*, 325 F.3d at 350–53 (noting connection between compulsory-counterclaim argument and *Colorado River* abstention argument).  But P&G did not raise that argument and so we need not address it here.

obtained in one court which may be set up as *res adjudicata* in the other." 294 U.S. 189, 195 (1935). That this case implicates compulsory counterclaims does not, in our view, alter the basic federalist principle undergirding this precedent, namely, that litigants are free to split their claims between state and federal court and "race to the first judgment," even if that stratagem is ill-advised and inefficient. *See* Miller, Federal Practice and Procedure § 1418 (acknowledging this point); Ben Clements, Note, *Pre-Judgment Enforcement of Federal Rule of Civil Procedure 13(a)*, 74 Cornell L. Rev. 167, 196–97 (1988) (same).

With this conclusion in hand, we must then ask whether, in light of the state court's April 16, 2019 decision, QAI is precluded from continuing to litigate its § 1981 claim in federal court. It is not. "Under Ohio law, '[t]he doctrine of res judicata encompasses the two related concepts of claim preclusion, also known as res judicata or estoppel by judgment, and issue preclusion, also known as collateral estoppel.'" *Anderson v. City of Blue Ash*, 798 F.3d 338, 350 (6th Cir. 2015) (quoting *O'Nesti v. DeBartolo Realty Corp.*, 862 N.E.2d 803, 806 (Ohio 2007)). However classified, though, preclusion comes into play only when a state court has entered a *final judgment*. *See Glidden Co. v. Lumbermens Mut. Cas. Co.*, 861 N.E.2d 109, 118 (Ohio 2006) (issue preclusion); *Grava v. Parkman Twp.*, 653 N.E.2d 226, 229 (Ohio 1995) (claim preclusion); *see also Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 80–81 (1984) (observing that the Constitution and federal law require federal courts to give preclusive effect only to "state-court judgment[s]"). And, here, the state trial court's decision dismissing QAI's § 1981 claim on the merits was not a final judgment. Rather, it was an interlocutory *decision*— that is, it did not dispose of the entire case, and can therefore be reconsidered at any point until final judgment. *See Harkai v. Scherba Industries, Inc.*, 736 N.E.2d 101, 105 (Ohio Ct. App. 2000) ("[A] 'judgment' must be distinguished from a 'decision.'"). It is not entitled to preclusive effect. *See Pieper v. Am. Arbitration Ass'n, Inc.*, 336 F.3d 458, 464 (6th Cir. 2003) ("Under Ohio law, interlocutory orders cannot form the basis for claims of res judicata or collateral estoppel.").[4]

---

[4]Once the state trial court enters final judgment, though, that judgment may be preclusive, even if timely appealed to the state appellate court. *See Libertarian Party of Ohio v. Husted*, 831 F.3d 382, 406 (6th Cir. 2016) ("[U]nder Ohio law, the pendency of an appeal . . . does not prohibit application of claim preclusion. The prior state

P&G resists this conclusion by contending first that permitting QAI's federal suit to proceed would effectively allow QAI to appeal the state court's April 16, 2019 order and thus run afoul of "the *Rooker-Feldman* doctrine," which bars federal review of certain state-court decisions. Appellee's Br. at 11 (citing *Wilkerson v. Weber*, No. 00-cv-74282, 2001 WL 739551, at *4 (E.D. Mich. 2001), citing, in turn, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983)). But the *Rooker-Feldman* doctrine applies only to the "narrow ground" of "cases brought by state-court losers complaining of injuries caused by state-court *judgments* rendered *before* the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon*, 544 U.S. at 284 (emphasis added). It is not applicable here.[5]

P&G also argues that, at the least, we should exercise our independent judgment and find that QAI waived and released its § 1981 claim in the Termination Agreement, just as the state trial court did. *See* Appellee's Br. at 25–34. The district court did not decide this entirely independent issue of waiver and release. We think the better course of action is to remand and let the district court consider the issue in the first instance. *See United States v. United Tech. Corp.*, 782 F.3d 718, 736 (6th Cir. 2015).

### III. CONCLUSION

For these reasons, we **REVERSE** the district court's judgment and **REMAND** for further proceedings consistent with this opinion.

---

court judgment remains 'final' for preclusion purposes, unless or until overturned by the appellate court.") (citation and alterations omitted).

[5]True, we have held that *Rooker-Feldman* applies to "interlocutory decisions," not just final judgments. *See, e.g.*, *Pieper*, 336 F.3d at 461–64. But that case law has since been displaced by *Exxon*, where "the Supreme Court 'confined' the application of the *Rooker-Feldman* doctrine to cases resembling *Rooker* and *Feldman* where the 'state proceedings [have] ended.'" *Nicholson v. Shafe*, 558 F.3d 1266, 1277 (11th Cir. 2009) (quoting *Exxon*, 544 U.S. at 284, 291).

—————————————

**DISSENT**

—————————————

GRIFFIN, Circuit Judge, dissenting.

The sole issue raised in the district court and on appeal is whether Quality Associates, Inc.'s (QAI) claims in this litigation arise out of the same transaction or occurrence that is the subject matter of P&G's state lawsuit to render them compulsory counterclaims under Ohio Rule of Civil Procedure 13(A). My colleagues and I agree that the district court correctly ruled QAI's claims did arise out of the same transaction or occurrence and thus were compulsory counterclaims in the state court litigation. However, the majority reverses the district court's judgment on an issue that neither party raised, preserved, or argued. For that reason, I respectfully dissent.

"The premise of our adversarial system is that appellate courts do not sit as self-directed boards of legal inquiry and research." *Koprowski v. Baker*, 822 F.3d 248, 258 (6th Cir. 2016) (quoting *Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983) (Scalia, J.)). Instead, we are to act "as arbiters of legal questions presented and argued by the parties." *Carducci*, 714 F.2d at 177. Under this party-presentation principle, "we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *Greenlaw v. United States*, 554 U.S. 237, 243 (2008).

So, quite prudently, we have an oft-repeated rule: we only address issues that are properly before us and avoid adjudicating ones that were neither presented to the district court nor to us on appeal. *See, e.g.*, *Citizens Coal Council v. U.S. E.P.A.*, 447 F.3d 879, 905 (6th Cir. 2006) (en banc); *see also McKinney v. Hoffner*, 830 F.3d 363, 374 (6th Cir. 2016); *Ewolski v. City of Brunswick*, 287 F.3d 492, 516–17 (6th Cir. 2002). This "eases appellate review by having the district court first consider the issue [and] . . . ensures fairness to litigants by preventing surprise issues from appearing on appeal." *Rice v. Jefferson Pilot Fin. Ins. Co.*, 578 F.3d 450, 454 (6th Cir. 2009) (citation omitted). Following this usual course provides a check on our decisional process, *see Elonis v. United States*, 135 S. Ct. 2001, 2013 (2015), and promotes

judicial values, "preserv[ing] the respective functions of the trial and appellate courts," *Estate of Quirk v. C.I.R.*, 928 F.2d 751, 758 (6th Cir. 1991) (citation omitted); *Cf. Adarand Constructors, Inc. v. Mineta*, 534 U.S. 103, 110 (2001) ("[B]y adhering scrupulously to the customary limitations on our discretion regardless of the significance of the underlying issue, we promote respect for the Court's adjudicatory process." (citation and ellipsis omitted)).

Application of this rule is even "more appropriate when [an] appellate court itself spots an issue the parties did not air below, and therefore would not have anticipated in developing their arguments on appeal." *Wood v. Milyard*, 566 U.S. 463, 473 (2012). An appellate court's decision on an unbriefed issue not only deprives the parties of "the opportunity to present whatever legal arguments [they] may have" on it, *Singleton v. Wulff*, 428 U.S. 106, 120 (1976), but also "effectively denie[s] appellate review of the newly addressed issue," *Estate of Quirk*, 928 F.2d at 758 (citation omitted). We have even reinforced this rule en banc, holding in *Citizens Coal Council* that the "panel majority erred in ruling on grounds not raised by the parties." 447 F.3d at 905; *see also id.* ("We granted en banc review, however, precisely to vacate the panel majority's sua sponte determination of . . . unbriefed issues."); *Cf. Bormuth v. Cty. of Jackson*, 870 F.3d 494, 499–501 (6th Cir. 2017) (en banc).

To be sure, we set aside this "rule of procedure" in "exceptional cases or particular circumstances" or to avoid "a plain miscarriage of justice." *Pinney Dock & Trans. Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1461 (6th Cir. 1988) (citation omitted). We do so, however, "rarely," *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008), like when the exercise of our discretion "would promote the finality of litigation in [a particular] case," *In re Morris*, 260 F.3d 654, 664 (6th Cir. 2001). Unlike my colleagues, I see no reason to apply this extraordinary exception here.

Whether a federal court errs in applying a state's counterclaim rule when the underlying state litigation is still pending does not "cr[y] out for resolution." *Rybarcuk v. TRW, Inc.*, 235 F.3d 975, 984 (6th Cir. 2000). I am not aware of, and the majority opinion does not cite, any cases from our circuit—let alone the country—where this exact issue has ever arisen. Nor will application of our general rule cause injustice to QAI. *Dir., Office of Workers' Comp. Programs, U.S. Dep't of Labor v. Quarto Min. Co.*, 901 F.2d 532, 536 (6th Cir. 1990). In my view, QAI

has forfeited its opportunity to have us consider this non-jurisdictional issue by failing to raise it in the district court and then here on appeal. The lack of prejudice is even more resounding given an Ohio state court has already ruled that Ohio's counterclaim rule bars the very claims QAI pursues here, irrespective of finality.

In concluding otherwise, the majority opinion makes much of the need to restrict a federal court's "power" in this unique circumstance. I do not read this invocation of authority as holding the district court lacked Article III jurisdiction to consider the case (which, of course, we must consider "sua sponte if the parties do not raise the issue." *Chapman v. Tristar Prods., Inc.*, 940 F.3d 299, 304 (6th Cir. 2019)). Terminology aside, I struggle with the fact that addressing the unbriefed issue resolves this appeal, but not this dispute. To the contrary, today's decision reopens the underlying litigation, protracting a case once closed. That is the opposite of what "should" happen when we find exceptions to our general rule. *In re Morris*, 260 F.3d at 664.

Because the majority opinion "misconceives our role" as judges, *Lipker v. AK Steel Corp.*, 698 F.3d 923, 932 n.5 (6th Cir. 2012), I must respectfully dissent. I would affirm the judgment of the district court.