RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0158p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

RLR INVESTMENTS, LLC,

                              *Plaintiff-Appellant*,

    *v.*

CITY OF PIGEON FORGE, TENNESSEE,

                              *Defendant-Appellee*.

> No. 20-6375

─────────────────

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 3:19-cv-00279—Curtis L. Collier, District Judge.

Decided and Filed: July 13, 2021

Before: CLAY, McKEAGUE, and LARSEN, Circuit Judges.

─────────────────

## COUNSEL

**ON BRIEF:** Gregory C. Logue, WOOLF MCCLANE BRIGHT ALLEN & CARPENTER PLLC, Knoxville, Tennessee, Anthony C. White, THOMPSON HINE LLP, Columbus, Ohio, Thomas M. Ritzert, THOMPSON HINE LLP, Cleveland, Ohio, for Appellant. Brian R. Bibb, WATSON, ROACH, BATSON & LAUDERBACK, P.L.C., Knoxville, Tennessee, Nathan D. Rowell, OGLE, ROWELL & PENLAND, P.C., Sevierville, Tennessee, for Appellee.

McKEAGUE, J., delivered the opinion of the court in which LARSEN, J., joined. CLAY, J. (pp. 20–33), delivered a separate dissenting opinion.

─────────────────

## OPINION

─────────────────

McKEAGUE, Circuit Judge. The City of Pigeon Forge, Tennessee, (City) decided to construct a riverside pedestrian walkway that ran across RLR Investments, LLC's (RLR's) land.

The City went to Tennessee state court with a petition for condemnation. The court determined that the project had a legitimate public use under Tennessee and federal law and issued an order of possession. Unhappy with that result, RLR filed a complaint in federal court alleging that the Order was unconstitutional and inconsistent with Tennessee law, asking the federal court to enjoin the Order's enforcement. The district court held that it lacked subject-matter jurisdiction under the *Rooker-Feldman* doctrine, and RLR appeals that determination, arguing that the Supreme Court's decision in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005), abrogated our precedent applying *Rooker-Feldman* to interlocutory orders. Because our precedent and *Exxon* can comfortably coexist, we affirm.

**I**

RLR owns two adjacent tracts of land on the Little Pigeon River in Pigeon Forge. When these events began, the first tract (Tract 1) had a private resort and parking spaces, while the second tract (Tract 2) had a duplex building.

The City decided to build a pedestrian walkway along the Little Pigeon River. The planned walkway went through both tracts, so the City filed a petition for condemnation (Petition) in Sevier County Circuit Court. *See* Tenn. Code Ann. § 29-17-101 *et seq.* (Tennessee's eminent-domain law). The Petition sought a permanent easement across both tracts, an easement which would make some or all of the parking spaces on Tract 1 unusable. In addition, the Petition sought temporary construction easements, including one on which the City would construct parking spaces on Tract 2 that would replace those lost on Tract 1.

RLR opposed the Petition. First, RLR argued that the compensation for the loss of the spaces on Tract 1 was too low. Second, RLR argued that the City's plan of building parking spaces on Tract 2 to replace those lost by Tract 1 was a private, rather than public, purpose. *See Kelo v. City of New London*, 545 U.S. 469, 477 (2005) (explaining takings law).

The Circuit Court held a hearing and issued an order of possession (Order) granting the City everything the Petition sought. The court held it was "satisfied that the [C]ity ha[d] carried its burden of proof that the [pedestrian walkway] project [wa]s for [a] public purpose" and that it

was a "proper exercise of the eminent domain powers of the [C]ity." The City took possession of the land and built the walkway, but never built the parking spots on Tract 2.

RLR continued to challenge the Order of Possession in the state trial court. Its challenges culminated in what it styled a motion for "summary judgment," in which RLR continued to argue that the Petition should be dismissed because it was not for a public purpose. Its theory seemed to be that the private purpose supporting the building of the parking spaces on Tract 2 "tainted" the entire Petition; this was true, RLR believed, even though it agreed that the easements across Tracts 1 and 2 were supported by the public purpose of building the pedestrian walkway. The Circuit Court held a hearing, but it was unpersuaded that the private purpose of the planned parking spaces required the entire Order of Possession to fall. The court denied the motion and cleared the way for the proceeding to progress to the valuation of the land.

Before the valuation proceedings happened, RLR filed the instant two-count complaint in federal court. The first count alleges an unlawful taking under the Fifth and Fourteenth Amendments and 42 U.S.C. § 1983. The second count[1] similarly alleges that the City took "RLR's property without a proper public purpose" and that the City's "position that it may enforce an unconstitutional Order of Possession" even though it was "without a proper public purpose" is wrong. The prayer for relief requests judgments (1) "that the Order of Possession is unconstitutional" and "without a proper public purpose"; (2) that the City violated state law "when it took RLR's land without a proper public purpose"; and an injunction (3)

> enjoining the City from [(a)] taking any action to interfere with RLR's right to peaceful possession and use of its property; [(b)] enjoining the City from exercising any ownership rights in RLR's property pursuant to the Order of Possession and from enforcing the Order of Possession; and [(c)] requiring the City to refile a new petition for condemnation limiting any taking of RLR's property to an appropriation for which there is a proper public purpose.

The district court held that it lacked subject-matter jurisdiction under the *Rooker-Feldman* doctrine. The court first held that the *Rooker-Feldman* doctrine still applies to interlocutory orders under Sixth Circuit precedent (*Pieper v. Am. Arb. Ass'n, Inc.*, 336 F.3d 458

---

[1]Erroneously labeled "Count Three" in the complaint.

(6th Cir. 2003)) despite intervening Supreme Court case law (*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005)). Then, the court held that *Rooker-Feldman* applied here because it was clear that the source of RLR's injury was the state court's Order.

## II

For the necessary context, we start with the somewhat troubled history of the *Rooker-Feldman* doctrine. Federal courts' jurisdiction "is confined within such limits as Congress sees fit to prescribe." *The Francis Wright*, 105 U.S. (15 Otto) 381, 385 (1881); *accord Keene Corp. v. United States*, 508 U.S. 200, 207 (1993). One such limit is hidden in 28 U.S.C. § 1257's positive statement that "[f]inal judgments or decrees rendered by the highest court of a State . . . may be reviewed by the Supreme Court." If the Supreme Court can review "final judgments" from state courts of last resort, then lower federal courts can't. *See Kovacic v. Cuyahoga Cnty. Dep't of Child. and Fam. Servs.*, 606 F.3d 301, 309 (6th Cir. 2010). That negative inference is called the *Rooker-Feldman* doctrine. *See Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983).

In the two canonical cases, a litigant received a final judgment from a state's highest court and then sought review of that judgment from a federal district court rather than the Supreme Court. *Rooker*, 263 U.S. at 414; *Feldman*, 460 U.S. at 483. Those are the easy cases, and they outline the basic rule: appeals from state courts of last resort go only to the Supreme Court. For a district court to hear such a case "would be an exercise of appellate jurisdiction[,] [but] [t]he jurisdiction possessed by the District Courts is strictly original." *Rooker*, 263 U.S. at 416; *see, e.g.*, 28 U.S.C. § 1331 ("The district courts shall have *original* jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." (emphasis added)).

The lower courts expanded on the basic rule to deal with harder cases. The expansions drew on *Feldman*'s principle that "lower federal courts possess no power whatever to sit in direct review of state court decisions." *Feldman*, 460 U.S. at 482 n.16 (quoting *Atl. Coast Line R.R. Co. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 296 (1970)). The generality of the principle lent itself to broad expansion. *See McCormick v. Braverman*, 451 F.3d 382, 395 (6th Cir. 2006) (noting how courts used *Rooker-Feldman* as "a panacea to be applied whenever state

court decisions and federal court decisions potentially or actually overlap"); Stephen I. Vladeck, *The Increasingly "Unflagging Obligation": Federal Jurisdiction after* Saudi Basic *and Anna Nicole*, 42 Tulsa L. Rev. 553, 563 (2007) ("*Rooker-Feldman* became a quasi-magical means of docket-clearing . . . ."). But with expansion came complication. *See VanderKodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397, 405 (6th Cir. 2020) (Sutton, J., concurring) (noting that the doctrine became famous for "caus[ing] . . . mischief, creating needless complications, distracting litigants and courts . . . , and helping no one"). Courts agreed that the doctrine prevented "a de facto appeal from a state court judgment" in federal court, but "[d]etermining what constitutes a forbidden de facto appeal . . . prove[d] difficult."**[2]** *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139 (9th Cir. 2004).

The instant case involves one such difficulty: Does *Rooker-Feldman* apply to interlocutory orders from lower state courts? We answered affirmatively in *Pieper v. American Arbitration Ass'n, Inc.* 336 F.3d at 462. There, a state trial court issued an order compelling Pieper to arbitrate. *Id.* at 460. Rather than appealing that order, Pieper filed a lawsuit in federal court seeking "a declaration that the disputes between Pieper and [the state-court defendant] were not properly subject to arbitration." *Id.* On its face, the outcome in *Pieper* "seem[ed] indisputable"—*Rooker-Feldman* applied because Pieper sought a de facto reversal of the state court's order to compel arbitration (despite the invocation of Pieper's constitutional rights to due process, a jury trial, etc.). *Id.* at 461.

Yet *Pieper* offered a twist on *Rooker* and *Feldman*, both of which had involved final judgments from the state's highest court. Congress gave the Supreme Court jurisdiction over "[f]inal judgments . . . rendered by the highest court of a state," 28 U.S.C. § 1257, but at issue in *Pieper* was an, interlocutory order of a state trial court. Pieper argued that because the Supreme

---

**[2]**The famous footnote from *Feldman* that expanded what might be considered a de facto appeal stated that

> If the constitutional claims presented to a United States District Court are inextricably intertwined with the state court's denial in a judicial proceeding of a particular plaintiff's application for admission to the state bar, then the District Court is in essence being called upon to review the state court decision. This the District Court may not do.

*Feldman*, 460 U.S. at 482 n.16.

Court couldn't hear an appeal of this interlocutory order or an order from a lower state court, the order did not fall within the ambit of *Rooker-Feldman*'s negative inference.  336 F.3d at 462.

We disagreed, joining the majority of circuits at the time, and held "that the *Rooker-Feldman* doctrine does apply to interlocutory orders and to orders of lower state courts." *Id.* (citing, *inter alia*, *Campbell v. Greisberger*, 80 F.3d 703, 707 (2d Cir. 1996); *Port Auth. Police Benevolent Ass'n, Inc. v. Port Auth. of N.Y. & N.J. Police Dep't*, 973 F.2d 169, 178 (3d Cir. 1992)).  The logic was obvious.  If lower federal courts can't review the final product of state-court litigation, why should a lower federal court entertain an interlocutory appeal so long as a state court hasn't yet come to a conclusion?  *See id.*  "To hold otherwise would allow potential relitigation of every state-court order . . . ."  *Id.* at 464.

RLR claims that *Pieper*'s logic has since been called into question by the Supreme Court's decision in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*  544 U.S. 280 (2005).  *Exxon* was a dispute over the royalties derived from a joint business venture.  *Id.* at 289.  The Saudi Basic Industries Corporation (SABIC) sued Exxon Mobil in state court for a declaratory judgment "that the royalty charges were proper," and two weeks later Exxon Mobil sued SABIC in federal court alleging the royalty charges were improper.  *Id.*  The state-court proceeding reached a jury verdict, with an appeal to the state supreme court pending, by the time the Third Circuit issued its opinion.  *Id.* at 290.  The Third Circuit held that *Rooker-Feldman* ended its jurisdiction when the state court entered judgment on the jury verdict.  *Id.*

The Supreme Court disagreed because Exxon Mobil "was not seeking to overturn the state-court judgment." *Id.* at 291.  To the contrary, both the state court and federal court properly exercised jurisdiction at the outset of each case.  That the state court happened to reach judgment first implicated preclusion law rather than *Rooker-Feldman*.  *Id.* at 292 ("When there is parallel state and federal litigation, *Rooker-Feldman* is not triggered simply by the entry of judgment in state court.").  Thus, *Exxon* stopped the use of *Rooker-Feldman* as a universal solution, halting its corrosion of concurrent jurisdiction in state and federal courts, preclusion law, and comity/abstention doctrines.  *Id.* at 283–84, 292–93.

But the Supreme Court didn't end *Rooker-Feldman*, despite some scholars' suggestion otherwise.  *See, e.g.*, Samuel Bray, Rooker-Feldman *(1923–2006)*, 9 Green Bag 2d 317, 317–18 (2006).  The Court "h[e]ld" that *Rooker-Feldman* "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  *Exxon*, 544 U.S. at 284; *accord Johnson v. De Grandy*, 512 U.S. 997, 1006 (1994).  Post-*Exxon*, the lower courts have worked to effect that confinement.  But the general principle that "[f]ederal district courts do not stand as appellate courts for decisions of state courts" survives.  *Hall v. Callahan*, 727 F.3d 450, 453 (6th Cir. 2013).

## III

Here, we consider the scope of *Rooker-Feldman*'s confinement in answering a question that the Court left open: "does [*Rooker-Feldman*] apply to bar federal actions commenced after the grant of interlocutory relief in a state court proceeding[?]"  Richard H. Fallon, Jr., John F. Manning, Daniel J. Meltzer & David L. Shapiro, *Hart & Wechsler's the Federal Courts and the Federal System* 1411 (7th ed. 2015).  But we don't write on a blank slate.  Because we've already said *Rooker-Feldman* does so apply in *Pieper*, we only answer whether *Exxon* "mandates modification" of that decision.  *See United States v. Moody*, 206 F.3d 609, 615 (6th Cir. 2000).  For the reasons outlined below, we determine that *Exxon* and *Pieper* can comfortably coexist and accordingly affirm.

Before we reach *Pieper*, however, we assess whether *Rooker-Feldman* applies at all.  We review the district court's *Rooker-Feldman* determination de novo.  *McCormick*, 451 F.3d at 389.

## A.

The starting point is the holding of *Exxon*: *Rooker-Feldman* applies in "[(1)] cases brought by state-court losers [(2)] complaining of injuries caused by state-court judgments [(3)] rendered before the district court proceedings commenced [(4)] and inviting district court review and rejection of those judgments."  *Exxon*, 544 U.S. at 284.  "The key words are 'review'

and 'judgment.'"   *VanderKodde*, 951 F.3d at 406 (Sutton, J., concurring).   Usually *Rooker-Feldman* cases are complicated because it's difficult to determine if a plaintiff seeks review of a state-court decision, *see, e.g.*, *Berry v. Schmitt*, 688 F.3d 290, 300 (6th Cir. 2012), or if a decision counts as a judgment, *see, e.g.*, *Van Hoven v. Buckles & Buckles, P.L.C.*, 947 F.3d 889, 892 (6th Cir. 2020).

"But there's no complexity when the litigant directly asks a federal district court to" declare a state-court order to be unconstitutional and enjoin its enforcement.  *United States v. Alkaramla*, 872 F.3d 532, 534 (7th Cir. 2017).  Here, it's clear that RLR asks us to review the state-court order of possession and that the order of possession counts as a judgment under *Rooker-Feldman*.

**1.**

There's no question that RLR asks us to "review" what the state court did.  After *Exxon*, we determine whether a plaintiff seeks review of a state-court judgment by looking at the "source of the injury the plaintiff alleges in the federal complaint," *McCormick*, 451 F.3d at 393, and consider what relief the plaintiff requests, *VanderKodde*, 951 F.3d at 402 (majority opinion).  If the injury's source is not the judgment, then the plaintiff's federal claim is independent of the state-court judgment and the district court has jurisdiction over the claim.  *See Hall*, 727 F.3d at 454.

In its complaint, RLR asks for "[a] judgment declaring that the Order of Possession is unconstitutional and that the City took RLR's private property without a proper public purpose in violation of the Fifth Amendment."  RLR proceeds to request an injunction to prevent the City from "taking any action to interfere with RLR's right to peaceful possession and use of its property" and "from exercising any ownership rights in RLR's property pursuant to the Order of Possession and from enforcing the Order of Possession."  By asking a federal court to declare a state-court order unconstitutional and prevent its enforcement, RLR impermissibly appealed the state court's order to the federal district court.  *See McCormick*, 451 F.3d at 395 (applying *Rooker-Feldman* to counts in which "Plaintiff alleges that the [state-court order] in and of itself is illegal and causes Plaintiff harm."); *Alkaramla*, 872 F.3d at 534; *see also Berry*, 688 F.3d at

300 (holding *Rooker-Feldman* inapplicable when the plaintiff "does not request relief from the [judgment] itself," *e.g.*, when the plaintiff "is not trying to get the [judgment] expunged or to get the decision overturned"); *Rooker*, 263 U.S. at 414 (affirming district court's dismissal of a request to have a state-court judgment declared "null and void" because it violated the Contract Clause).

RLR argues that it avoided the *Rooker-Feldman* doctrine by filing § 1983 and constitutional claims that were not part of the state case, but that's incorrect. The test is whether the plaintiff's injury stems from the state-court judgment, not whether the claims are identical.[3] *See, e.g.*, *Pieper*, 336 F.3d at 461 (applying *Rooker-Feldman* even though "none of the[] [claims] w[ere] actually raised in the state-court litigation"). RLR would only prevail on its § 1983 claims or its constitutional claims if the state court were wrong, so the Order is the source of the injury. *See McCormick*, 451 F.3d at 395. Nor is the City's conduct here independent of the state court's Order. The City took RLR's property as a consequence of the Order, not independently.

RLR asks for the type of review *Rooker-Feldman* forbids. The Supreme Court limited *Rooker-Feldman* to instances "when a plaintiff asserts before a federal district court that a state court judgment itself was unconstitutional or in violation of federal law," *id.*, and that's exactly what happened here.

**2.**

Whether the Order is a "judgment" under § 1257 is also straightforward. For the purposes of *Rooker-Feldman*, the Supreme Court has defined a "judgment" under § 1257 to be an "investigat[ion], declar[ation], and enforce[ment of] 'liabilities as they [stood] on present or past facts and under laws supposed already to exist.'" *Feldman*, 460 U.S. at 479 (final alteration in original) (quoting *Prentis v. Atl. Coast Line Co.*, 211 U.S. 210, 226 (1908)); *see Van Hoven*, 947 F.3d at 892 (holding that a writ of garnishment did not qualify as a judgment for *Rooker-Feldman*). A court's "ministerial action[s]" do not qualify as judgments. *Feldman*,

---

[3]We also disagree with RLR's contention that the issues it raised in state court differ from those raised in federal court. In both instances, RLR argued that the City's Order of Possession was an unconstitutional taking without a valid public purpose.

460 U.S. at 479.  To determine whether the action is ministerial, we ask "whether the state court addressed the claim 'on the merits.'"  *Berry*, 688 F.3d at 299 (quoting *Feldman*, 460 U.S. at 478).

The Order qualifies as a judgment.  Under Tennessee law, the government can petition for condemnation of land—exercise its eminent domain power—as "long as the property is taken for a legitimate public use in accordance with the fifth and fourteenth amendments to the United States Constitution [and] the Constitution of Tennessee."  Tenn. Code Ann. § 29-17-102; *see id.* § 29-17-104.  Accordingly, the judge considered the Petition, RLR's objection, the testimony of witnesses, counsel's statements, and the balance of the record.  He then applied the facts to Tennessee's eminent-domain law and concluded that "the [C]ity has carried its burden of proof that the [Petition for Condemnation] is for public purpose . . . [and a] proper exercise of the eminent domain powers of the [C]ity."  And in response to RLR's subsequent attempts to have the Order of Possession rescinded, the judge found that the order could stand "[r]egardless of whether" providing for the construction of the parking spaces "was improper or not."

Plainly, the judge made a merits determination.  *See Berry*, 688 F.3d at 299.  This case is far from those which find a court action to be merely ministerial.  *See, e.g.*, *Van Hoven*, 947 F.3d at 892–93 (holding that a writ of garnishment is ministerial because "[a] creditor may obtain one simply by filing a form with the court clerk, who then issues the writ as long as the request 'appears to be correct'" (quoting Mich. Ct. R. § 3.101(D))); *see also Berry*, 688 F.3d at 299 (assuming a warning letter qualified as a state-court decision when "the record demonstrate[d] that the Inquiry Commission considered a complaint against Berry, evaluated evidence, and decided that the case warranted informal disposition").

**B.**

RLR contends that *Rooker-Feldman* doesn't apply because the Order is not a *final* judgment.  According to its plain language, § 1257 only applies to "final judgments."  The Order isn't yet final, at least in the sense that the trial has not yet ended and appeals haven't been exhausted.  But our precedent from *Pieper* allows the application of *Rooker-Feldman* to interlocutory orders.  *Pieper*, 336 F.3d at 462.  RLR contends that *Exxon* abrogated *Pieper*.

In the Sixth Circuit, a three-judge panel may not overturn a prior decision unless a Supreme Court decision "mandates modification" of our precedent. *Moody*, 206 F.3d at 615; *accord United States v. Elbe*, 774 F.3d 885, 891 (6th Cir. 2014); *see also Jacobs v. Alam*, 915 F.3d 1028, 1036 (6th Cir. 2019). Absent such mandate, or a decision from our en banc court overruling our precedent, we are bound by what we've said before. *Salmi v. Sec'y of HHS*, 774 F.2d 685, 689 (6th Cir. 1985).

This principle is foundational to how the law develops. It serves the interests "of uniformity, certainty, and stability in the law." *New York Life Ins. Co. v. Ross*, 30 F.2d 80, 83 (6th Cir. 1928). Without it, each case would be a brand of first-impression exploration. *See* Joseph W. Mead, *Stare Decisis in the Inferior Courts*, 12 Nev. L.J. 787, 795–96 (2012) (describing how, historically, three-judge circuit-court panels could overrule their own precedents). And the principle is also a critical piece of a larger *stare decisis* framework. It interlocks with its corollaries. For example, when two precedents conflict, we are bound to follow the first in time. *United States v. Jarvis*, 999 F.3d 442, 445–46 (6th Cir. 2021). And when it seems that the Supreme Court might soon change a doctrine, we leave that prerogative to the Court and do not try to anticipate the Court's direction. *See Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989). Failure to adhere to one *stare decisis* principle echoes throughout the system.

The point is that our task is limited. *Pieper* has not been overruled by our en banc court. And the Supreme Court has not offered any "directly applicable" analysis that is inconsistent with *Pieper*. *See United States v. White*, 920 F.3d 1109, 1113 (6th Cir. 2019); *Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 720–21 (6th Cir. 2016). So *Pieper* binds us. We ask not whether we would decide *Pieper* the same way with fresh eyes, but whether the holding of *Exxon* mandates modification of *Pieper*.

**1.**

First, RLR argues we have already recognized *Exxon*'s abrogation of *Pieper*. In *Quality Associates, Inc. v. The Procter & Gamble Distributing LLC*, we said in a footnote that *Pieper* was "displaced" by *Exxon* and that *Rooker-Feldman* now applies only "where the state

proceedings . . . ended" prior to the filing of the federal complaint. 949 F.3d 283, 290 n.5 (6th Cir. 2020) (alteration in original) (quoting *Nicholson v. Shafe*, 558 F.3d 1266, 1277 (11th Cir. 2009)). But, as we later noted, any intimation that *Exxon* required a final judgment, including through appeal exhaustion, was dicta[4] because in *Quality Associates* the relevant state-court order was not rendered until after the federal complaint was filed. *See Hancock v. Miller*, No. 20-5422, 2021 WL 1157843, at *6 n.4 (6th Cir. Mar. 26, 2021). There is no doubt that if a federal complaint is filed before the relevant state-court judgment, *Rooker-Feldman* does not apply. *See, e.g.*, *Hunter v. Hamilton Cnty. Bd. of Elections*, 635 F.3d 219, 233 (6th Cir. 2011). After all, that's *Exxon* itself. *Quality Associates* offers no binding guidance on *Rooker-Feldman*'s application to federal complaints that challenge an existing interlocutory state-court order.

**2.**

Second, RLR argues that *Pieper* is inconsistent with *Exxon* because, in its view, *Exxon* clarified that *Rooker-Feldman* only applies "at the end of state court proceedings, not to interlocutory state court orders." This argument has prevailed at times in other circuits. When we decided *Pieper*, we joined the majority of circuits in holding that *Rooker-Feldman* applied to interlocutory orders. 336 F.3d at 462. Since then, most circuits that have considered RLR's argument that *Exxon* abrogated *Pieper*'s analogs have agreed. *See, e.g.*, *Malhan v. Sec'y U.S. Dep't of State*, 938 F.3d 453, 461 (3d Cir. 2019); *Nicholson*, 558 F.3d at 1279; *Guttman v. Khalsa*, 446 F.3d 1027, 1031 (10th Cir. 2006) ("*Exxon Mobil* reverses this holding [that *Rooker-Feldman* applies to interlocutory orders].").[5]

But of those circuits that have eschewed *Pieper*'s categorial rule, most have not adopted the opposite categorical rule in its place. Rather, they have adopted a hybrid approach, first articulated by the First Circuit in *Federación de Maestros de P.R. v. Junta de Relaciones del*

---

[4]We are bound by Sixth Circuit holdings but not by dicta. A holding is a determination of law critical to a decision, while dicta is anything "not necessary to the determination of the issue on appeal." *See Freed v. Thomas*, 976 F.3d 729, 738 (6th Cir. 2020) (quoting *United States v. Swanson*, 341 F.3d 524, 530 (6th Cir. 2003)).

[5]*See also D.A. Osguthorpe Fam. P'ship v. ASC Utah, Inc.*, 705 F.3d 1223, 1232 (10th Cir. 2013).

*Trabajo de P.R.*, 410 F.3d 17, 24 (1st Cir. 2005).  *See Malhan*, 938 F.3d at 459 (collecting authorities).  The hybrid approach applies *Rooker-Feldman* when (1) the state court of last resort has affirmed the judgment; (2) the time to appeal has expired or the parties voluntarily terminated litigation; or (3) the state court of last resort has resolved the relevant federal issue but state law or factual issues remain.  *Id.* at 459–60 (distilling the test from *Federación de Maestros*, 410 F.3d at 24–25).

Some circuits, moreover, have split on the *Pieper* issue.[6]  The Seventh Circuit, for example, has taken a variety of approaches.  It has said that *Rooker-Feldman* "does not apply independently to interlocutory orders."  *Kowalski v. Boliker*, 893 F.3d 987, 995 (7th Cir. 2018); *accord TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 591 (7th Cir. 2005).  But it has also said that "interlocutory orders entered prior to the final disposition of state court lawsuits are not immune from the jurisdiction-stripping powers of *Rooker-Feldman*."  *Sykes v. Cook Cnty. Cir. Ct. Prob. Div.*, 837 F.3d 736, 742 (7th Cir. 2016).  And it has said that "[t]he principle that only the Supreme Court can review the decisions by the state judiciary in civil litigation is as applicable to interlocutory as to final state-court decisions."  *Harold v. Steel*, 773 F.3d 884, 886 (7th Cir. 2014).  Most recently, the Seventh Circuit acknowledged the tension in its previous statements without resolving the issue.  *Bauer v. Koester*, 951 F.3d 863, 867 (7th Cir. 2020).  In *Bauer*, it determined that a state foreclosure order was "effectively final" and therefore barred by *Rooker-Feldman*.  *Id.*  The court also reasoned, in the alternative, that even if "there is no final judgment for purposes of *Rooker-Feldman*, '[n]othing in the Supreme Court's decisions suggests

---

[6]*See Houston v. Venneta Queen*, 606 F. App'x 725, 731–32 (5th Cir. 2015) (indicating that *Rowley v. Wilson*, 200 F. App'x 274, 275 (5th Cir. 2006) (per curiam), incorrectly held that *Exxon* "unequivocally" overruled precedent on interlocutory orders and *Rooker-Feldman*); *cf. Burciaga v. Deutsche Bank Nat'l Tr. Co.*, 871 F.3d 380, 384 & n.5 (5th Cir. 2017) (noting unresolved tension between pre- and post-*Exxon* precedent).  *Compare Mothershed v. Justs. of Sup. Ct.*, 410 F.3d 602, 604 n.1 (9th Cir. 2005) (holding that judgment is rendered for *Rooker-Feldman* ("proceedings end") when the state supreme court has finalized its decision on the issue), *as amended on denial of reh'g* (July 21, 2005), *and Dornheim v. Sholes*, 430 F.3d 919, 924 (8th Cir. 2005) ("At the time that the Dornheims commenced this federal action, the state court adjudication was not complete[,]" so *Rooker-Feldman* did not apply.), *with Santos v. Superior Ct. of Guam*, 711 F. App'x 419, 420 (9th Cir. 2018) (memorandum) ("We have expressly ruled that the doctrine applies not only to final judgments, but also to 'interlocutory state court decisions.'" (quoting *Doe & Assocs. Law Offs. v. Napolitano*, 252 F.3d 1026, 1030 (9th Cir. 2001))), *and Parker L. Firm v. Travelers Indem. Co.*, 985 F.3d 579, 584 (8th Cir. 2021) ("This court, like other circuits, has concluded that *Rooker-Feldman* applies to state court judgments that are not yet final.").

that state-court decisions too provisional to deserve review within the state's own system can be reviewed by federal district and appellate courts.'" *Id.* at 867 (quoting *Harold*, 773 F.3d at 886).

In sum, some circuits have found RLR's argument that *Exxon* abrogated *Pieper* convincing.  But there is not unanimity.

**3.**

Holding that *Pieper* survives would be in tension with some of these cases, and we are hesitant to deepen any conflicts between the circuits.  But we must decide independently whether *Exxon* mandates modification of *Pieper*.  Based on *Exxon*'s explicit holding, the Court's definition of "judgment" for *Rooker-Feldman* purposes, and *Exxon*'s focus on allowing parallel litigation, we think *Pieper* and *Exxon* can comfortably coexist.  The litigation here is an impermissible "covert appeal," not a parallel proceeding.  *See Van Hoven*, 947 F.3d at 892.  We developed the source-of-the-injury test to implement *Exxon*'s holding, and *Pieper* faithfully applies that test.

Look first at the explicit holding of *Exxon*:

> The *Rooker-Feldman* doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: [1] cases brought by state-court losers [2] complaining of injuries caused by state-court judgments [3] rendered before the district court proceedings commenced and [4] inviting district court review and rejection of those judgments.

544 U.S. at 284.  As outlined above, there's no question that RLR lost in state court, that the Order was rendered before the federal complaint here was filed, and that the complaint invited the district court to review the Order.

The only question left is whether "judgments" means only *final* judgments.  The Court has never answered this question, and the verbiage the Court uses is not dispositive on this point.  In the Court's specific enunciation of its holding, it only said "judgment."  And not all "judgments" are final.  *Cf.* Fed. R. Civ. P. 54(a) ("'Judgment' as used in these rules includes a decree and any order from which an appeal lies."); Tenn. R. Civ. P. 54.01 (same).  In describing the doctrine after *Exxon*, the Court has sometimes used the word "decision" rather than "judgment." *See Skinner v. Switzer*, 562 U.S. 521, 532 (2011); *Lance v. Dennis*, 546 U.S. 459,

466 (2006) (per curiam); *see also Berry*, 688 F.3d at 299 ("*Rooker-Feldman* focuses on whether the state court decision caused the injury."). Use of the word "decision" perhaps gets us a little further away from § 1257's "final judgment," but whether a judgment or a decision, the Court's language from *Exxon* and after doesn't definitively speak to finality.

On the other hand, the Court's earlier explanations of the term "judgment" don't support a finality requirement. In *Feldman*, for example, the Court differentiated judicial actions (judgments) from other "legislative, ministerial, or administrative" actions. 460 U.S. at 479. The distinction was whether a judge "investigates, declares and enforces liabilities as they stand on present or past facts and under laws." *Id.* at 477 (quoting *Prentis*, 211 U.S. at 226). That's why we don't require a "judgment" to be a "formal judgment or order," but instead only require a merits determination. *Berry*, 688 F.3d at 299.

Whether a litigant has a right to appeal doesn't affect whether the litigant is the subject of a judicial action. In other words, whether a litigant may yet appeal a decision does not mean that the decision was not "on the merits." *Id.* (quoting *Feldman*, 460 U.S. at 478). This illuminates an interpretive path to reading *Exxon* and *Pieper* together: *Exxon* requires a state court to have "rendered judgment" for *Rooker-Feldman* to apply, which means to have made a decision on the merits, and merits decisions do not always require finality.

There is evidence to the contrary. The *Exxon* Court referenced the finality of the judgments in *Rooker* and *Feldman* themselves when describing those cases. *Exxon*, 544 U.S. at 286. This is the language on which our sister circuits have focused: the facts of *Rooker* and *Feldman* were that "the losing party in state court filed suit in federal court *after the state proceedings ended.*" *Nicholson*, 558 F.3d at 1274 (emphasis added) (quoting *Exxon*, 544 U.S. at 291); *see Malhan*, 938 F.3d at 461. State proceedings haven't ended when an appeal is pending, they reason, so they conclude *Exxon* means that *Rooker-Feldman* only applies when state appeals (or the possibility thereof) are exhausted. *Nicholson*, 558 F.3d at 1279; *see Federación de Maestros*, 410 F.3d at 24.

We don't find that language compelling, at least so far as to *mandate* a finality requirement. The finality of the state-court proceedings was not critical to the outcome in

*Exxon*.**7**  And *Exxon* never said that *all* state proceedings had to have ended for *Rooker-Feldman* to apply.   *Exxon* was focused on the fact that the parties "properly invoked concurrent jurisdiction" and the Court's point was that neither's jurisdiction "vanishes" when one sovereign's court reaches judgment.  *Exxon*, 544 U.S. at 292; *see ADSA, Inc. v. Ohio*, 176 F. App'x 640, 643 n.1 (6th Cir. 2006) (describing the holding of *Exxon* as requiring litigants to prove that "the federal proceedings are not parallel to the state-court proceedings" to invoke *Rooker-Feldman*).   Though the state-court order that RLR attacks here was not a final, appealable order from the state's highest court, the order was already in place when RLR came to federal court.  Rather than invoking concurrent jurisdiction over an unadjudicated question, RLR asked the district court to strike down an existing state-court order.

*Exxon* doesn't tell us when a state-court judgment matures for *Rooker-Feldman* purposes because in *Exxon* the federal complaint was filed before the state court reached *any* merits decision.  This temporal boundary from *Exxon*, that a "state-court judgment [be] rendered before the district court proceedings commenced," is contained within the source-of-the-injury test. *Exxon*, 544 U.S. at 284.  *Exxon* fails the test: Exxon Mobil could not have complained of any state-court judgment in favor of SABIC because Exxon Mobil filed its federal complaint well before the state court made any merits decisions.  That's why we adopted the source-of-the-injury test in the wake of *Exxon*: to "winnow[] would-be *Rooker-Feldman* cases" to comply with the Court's confinement of the doctrine.  *See Hancock*, 2021 WL 1157843, at \*5; *see also McCormick*, 451 F.3d at 393 (adopting the source-of-the-injury test as developed post-*Exxon* in *Davani v. Va. Dep't of Transp.*, 434 F.3d 712 (4th Cir. 2006)).

And the source-of-the-injury test is not inconsistent with *Pieper*.  If true parallel litigation exists, *Rooker-Feldman* does not apply because both litigants "properly invoked concurrent jurisdiction" (*Exxon*).   *Exxon*, 544 U.S. at 292.   Once one court reaches final judgment, preclusion law applies. *See id.* at 293.  But if a litigant is unhappy with a state-court decision and goes to a federal court to remedy that loss, that "invokes the same idea of respect for state courts

---

**7**Notably, the requirement that "state proceedings ended" is found in *Exxon*'s description of *Rooker* and *Feldman*, rather than in its explicit holding.  *See Venneta Queen*, 606 F. App'x at 732; Dustin E. Buehler, *Revisiting Rooker-Feldman: Extending the Doctrine to State Court Interlocutory Orders*, 36 Fla. St. U. L. Rev. 373, 413 n.308 (2009).

as preclusion" but is conceptually distinct (*Pieper*). *Hancock*, 2021 WL 1157843, at *4. *Rooker-Feldman* applies. The litigant in the second example could not have filed its suit in federal court any earlier because the injury (the state-court judgment) had not yet occurred. When that litigant comes to federal court to seek "review and rejection of [the existing state-court] judgment[]" that caused its injury, *Rooker-Feldman*'s jurisdictional bar governs. *Exxon*, 544 U.S. at 284.

In other words, it remains true after *Exxon* that "lower federal courts possess no power whatever to sit in direct review of state court decisions." *Feldman*, 460 U.S. at 482 n.16 (citation omitted). That's what happened here. RLR lost in state court and, dissatisfied with the result, asked the district court to come to the opposite conclusion and undo the state court's Order. That's not parallel litigation. RLR lost before it sought federal-court review, and RLR would not have had the injury it complained of but-for the state court's Order. RLR "plainly has . . . repaired to federal court to undo the [state court] judgment," which, in the words of *Exxon*, is "the paradigm situation in which *Rooker-Feldman*" applies. 544 U.S. at 293.

Nothing in *Exxon* mandates that *Rooker-Feldman* does not apply to interlocutory orders. And, despite our dissenting colleague's arguments to the contrary, neither does anything in *Lance v. Dennis*, 546 U.S. 459 (2006). The dissent correctly points out that, in introducing the *Rooker-Feldman* doctrine, *Lance* says "lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments." *See* Dissenting Op. at 20, 24, 29; *Lance*, 546 U.S. at 463. But the dissent overreads this introductory statement. The statement does not purport to be exclusive. *Lance* dealt with a final state-court judgment, *Lance*, 546 U.S. at 461–62, so it is not surprising that it stated the rule in those terms. *Lance* had no occasion to discuss *Rooker-Feldman*'s application to non-final orders. And the dissent ignores *Lance*'s later statement that *Rooker-Feldman* is available when "a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court," or, in other words, "takes a *de facto* appeal." *Id.* at 466 & n.2. *Lance* simply does not address the question whether *Rooker-Feldman* bars de facto appeals from interlocutory state-court orders.

Indeed, we appeared to recognize this in *McCormick*, which issued shortly after the Supreme Court's decisions in *Exxon* and *Lance*. *See* 451 F.3d at 395. That case partially

concerned an interlocutory order of receivership from the Wayne County Circuit Court in Michigan. *See id.* at 387, 395. Much like RLR does here, the plaintiff in *McCormick* "allege[d] that the order of receivership in and of itself [wa]s illegal and cause[d] [her] harm." *Id.* at 395. We held that the district court lacked jurisdiction over the relevant claims under *Rooker-Feldman*. *Id.* at 395–96. This was true despite the fact that proceedings continued in the state trial court for three years after the order of receivership was issued and for nearly a year after our own decision. *See McCormick v. McCormick*, No. 84-422014-DO (Wayne County Circuit Court); *see also Hancock*, 2021 WL 1157843, at *6 n.4 ("Our leading post-*Exxon* case, [*McCormick*,] which pre-dated *Quality Associates*, considered applying *Rooker-Feldman* appropriate when the proceedings on the relevant order had 'ended,' though the case as a whole had three years of proceedings yet to come."). In sum, "[n]othing in the Supreme Court's decisions suggests that state-court decisions too provisional to deserve review within the state's own system can be reviewed by federal district and appellate courts." *Harold*, 773 F.3d at 886 (Easterbrook, J.). The simple logic of *Pieper* seems to apply with as much force today as it did before *Exxon*: "we do not believe that lower federal courts should be prohibited from reviewing judgments of a state's highest court but should somehow have free rein to review the judgments of lower state courts." *Pieper*, 336 F.3d at 463. Instead, "[t]he principle that only the Supreme Court can review the decisions by the state judiciary in civil litigation is as applicable to interlocutory as to final state-court decisions. A truly interlocutory decision should not be subject to review in any court; review is deferred until the decision is final." *Harold,* 773 F.3d at 886; *see also* 18B Charles Alan Wright & Arthur R. Miller et al., *Federal Practice & Procedure: Jurisdiction* § 4469.2 (2d ed. Apr. 2021 update) ("It is difficult to understand why the implied limits of federal subject-matter jurisdiction do not apply to such an [appeal of an interlocutory order] just as to an action brought after entry of a final state-court judgment."). *Pieper* does not prevent the proper exercise of concurrent jurisdiction, but instead prevents federal appeals of state-court orders that can only reach federal court, via Congress' direction in § 1257, at the Supreme Court. *Cf. Pieper*, 336 F.3d at 464. As the Court in *Exxon* reiterated, the district courts are courts "of original jurisdiction," and they are not authorized by statute "to exercise appellate jurisdiction over state-court judgments, which Congress has reserved to [the Supreme Court

under] § 1257(a)."   544 U.S. at 292 (quoting *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 644 n.3 (2002)).

\* \* \*

We recognize that the Court "warned" that the lower courts had gone too far in extending *Rooker-Feldman*.  *Malhan*, 938 F.3d at 461 (quoting *Lance*, 546 U.S. at 464).  But the Court has also made clear that "*Rooker-Feldman* is not simply preclusion by another name."  *Lance*, 546 U.S. at 466.  We need to be mindful of extending the Supreme Court decisions farther than they reach, *cf. Rodriguez de Quijas*, 490 U.S. at 484, and to remain faithful to our precedent, *see Elbe*, 774 F.3d at 891.  Those principles carry special force when our precedent circumscribes our jurisdiction.  *Cf. Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("Federal courts are courts of limited jurisdiction.  [We] possess only that power authorized by Constitution and statute . . . .  [And] [i]t is to be presumed that a cause lies outside this limited jurisdiction . . . ." (citations omitted)).  Under *Rooker-Feldman*—even after *Exxon*—federal district courts don't have jurisdiction over appeals of interlocutory state-court orders.

The judgment of the district court is **AFFIRMED**.

——————————

**DISSENT**

——————————

CLAY, Circuit Judge, dissenting. The district court invoked the *Rooker-Feldman* doctrine to hold that it lacked jurisdiction over this case because of an interlocutory order entered by a state trial court. But *Rooker-Feldman* "preclude[s]" lower federal courts "from exercising appellate jurisdiction over *final state-court judgments*," not nonfinal state court interlocutory orders. *Lance v. Dennis*, 546 U.S. 459, 463 (2006) (emphasis added); *accord Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 291 (2005). Accordingly, in line with every other circuit to have published a considered opinion on this issue, *Exxon* and *Lance* require this Court to overrule *Pieper v. American Arbitration Association, Inc.*, 336 F.3d 458 (6th Cir. 2003)—our pre-*Exxon* and -*Lance* opinion expanding the *Rooker-Feldman* doctrine to include state court interlocutory orders. Because the majority continues to apply *Pieper*, I dissent.

## I.

"Federal courts are courts of limited jurisdiction . . . possess[ing] only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citing *Willy v. Coastal Corp.*, 503 U.S. 131, 136–137 (1992); *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541 (1986)). But when the Constitution or Congress provide jurisdiction, federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817–18 (1976) (citing *England v. Louisiana State Bd. of Medical Examiners*, 375 U.S. 411, 415 (1964); *McClellan v. Carland*, 217 U.S. 268, 281 (1910); *Cohens v. Virginia*, 6 Wheat. 264, 404 (1821)). Relevant to this case in which RLR asserted claims under the Fifth and Fourteenth Amendments to the U.S. Constitution, Congress has provided that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Therefore, in the absence of some limitation on the jurisdiction provided by § 1331, the district court was required to exercise jurisdiction over RLR's suit. According to the majority, 28 U.S.C. § 1257—which

states that "[f]inal judgments or decrees rendered by the highest court of a State . . . may be reviewed by the Supreme Court"—and the *Rooker-Feldman* doctrine provide such a limitation.

**A.**

In *Rooker v. Fidelity Trust Co.*, the appellant sought to have the federal district court declare a "judgment of a circuit court in Indiana, which was affirmed by the Supreme Court of the state, . . . null and void, and to obtain other relief dependent on that outcome." 263 U.S. 413, 414 (1923). Relying on a precursor to § 1257, the Supreme Court in 1923 affirmed the district court's dismissal of the suit because, "[u]nder the legislation of Congress," only the United States Supreme Court can "exercise . . . appellate jurisdiction" over a final decision of a state Supreme Court. *Id.* at 416.

Over the next sixty years, the Supreme Court "cited *Rooker* in one opinion, *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 283 (1946), in reference to the finality of prior judgments." *Exxon*, 544 U.S. at 288 n.3. But in 1983, in *District of Columbia Court of Appeals v. Feldman*, the Supreme Court confronted the question of "what authority the United States District Court for the District of Columbia and the United States Court of Appeals for the District of Columbia Circuit have to review decisions of the District of Columbia Court of Appeals . . . ." 460 U.S. 462, 463 (1983). The answer: none. *See id.* at 486–87. Relying on § 1257 and *Rooker*, the Supreme Court explained that the case "required the District Court to review a final judicial decision of the highest court of a jurisdiction," but that "[r]eview of such determinations can be obtained only in this Court." *Id.* at 476, 486.

From these two cases standing for the unremarkable proposition that only the United States Supreme Court can exercise appellate jurisdiction over final decisions of a state Supreme Court, *see* 28 U.S.C. § 1257, the "so-called *Rooker-Feldman* doctrine" was born, *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 18 (1987) (Scalia, J., concurring). In the years after *Feldman* was decided, lower federal courts seized on the doctrine as "a quasi-magical means of docket-clearing." Stephen I. Vladeck, *The Increasingly "Unflagging Obligation": Federal Jurisdiction After Saudi Basic and Anna Nicole*, 42 Tulsa L. Rev. 553, 563 (2007). Based on language in *Feldman* suggesting that federal district courts also lack jurisdiction over claims "inextricably

intertwined with the District of Columbia Court of Appeals' decisions," *Feldman*, 460 U.S. at 486–87, even though "the Supreme Court used that phrase in *Feldman* to twice describe a plaintiff's complaint of harm from a state court decision itself, many circuits, including this one, gave an expansive definition to that phrase," *McCormick v. Braverman*, 451 F.3d 382, 391 (6th Cir. 2006). One scholar noted that, although the Supreme Court had applied the doctrine only twice, between 1992 and 1999, the lower federal courts invoked the *Rooker-Feldman* doctrine to dismiss about five hundred cases. *See* Susan Bandes, *The* Rooker-Feldman *Doctrine: Evaluating Its Jurisdictional Status*, 74 Notre Dame L. Rev. 1175, 1175 (1999) (citing Suzanna Sherry, *Judicial Federalism in the Trenches: The* Rooker-Feldman *Doctrine in Action*, 74 Notre Dame L. Rev. 1085 (1999)).

In line with this trend, although § 1257—the source of the *Rooker-Feldman* doctrine—relates to "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had," 28 U.S.C. § 1257, and *Rooker* and *Feldman* dealt, respectively, with final judgments from the highest courts in Indiana and the District of Columbia, "the majority of circuits," including this one, extended the *Rooker-Feldman* doctrine to include "interlocutory orders and to orders of lower state courts." *Pieper*, 336 F.3d at 462.

**B.**

As the majority explains, under *Pieper*, the district court correctly held that the *Rooker-Feldman* doctrine applies to interlocutory orders, including the one at issue in this case. And no matter how strongly a panel disagrees with binding circuit precedent, it is well-established that "[a] panel of this court may not overturn binding precedent because a published prior panel decision 'remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision.'" *United States v. Elbe*, 774 F.3d 885, 891 (6th Cir. 2014) (quoting *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985)); *see also Brumbach v. United States*, 929 F.3d 791, 795 (6th Cir. 2019). But here, the Supreme Court's subsequent decisions in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005), and *Lance v. Dennis*, 546 U.S. 459 (2006), require that we modify *Pieper* and hold that the *Rooker-Feldman* doctrine does not ordinarily apply to state court interlocutory orders.

## C.

In *Exxon*, "two subsidiaries of petitioner Exxon Mobil Corporation . . . formed joint ventures with respondent Saudi Basic Industries Corp. (SABIC) to produce polyethylene in Saudi Arabia." 544 U.S. at 289. After "the parties began to dispute royalties . . . SABIC preemptively sued the two ExxonMobil subsidiaries in Delaware Superior Court in July 2000 seeking a declaratory judgment that the royalty charges were proper under the joint venture agreements." *Id.* "About two weeks later, ExxonMobil and its subsidiaries countersued SABIC in the United States District Court for the District of New Jersey, alleging that SABIC overcharged the joint ventures for the sublicenses." *Id.* On an appeal of the federal district court's denial of SABIC's motion to dismiss, the Third Circuit held that it lacked jurisdiction under *Rooker-Feldman* because, while the action was pending in federal court, a state court judgment had been entered. *See id.* at 289–291.

In a unanimous opinion, the Supreme Court reversed. The Supreme Court explained that "[s]ince *Feldman*, this Court has never applied *Rooker-Feldman* to dismiss an action for want of jurisdiction," but that the "doctrine has sometimes been construed to extend far beyond the contours of the *Rooker* and *Feldman* cases, overriding Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts, and superseding the ordinary application of preclusion law pursuant to 28 U.S.C. § 1738." *Id.* at 283, 287. The Court further explained that "*Rooker* and *Feldman* exhibit the limited circumstances in which this Court's appellate jurisdiction over state-court judgments, 28 U.S.C. § 1257, precludes a United States district court from exercising subject-matter jurisdiction in an action it would otherwise be empowered to adjudicate under a congressional grant of authority, *e.g.*, § 1330 (suits against foreign states), § 1331 (federal question), and § 1332 (diversity)." *Id.* at 291. Thus, the Court held that the *Rooker-Feldman* doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284. And as to the issue of which state court judgments are "of the kind" from *Rooker* and *Feldman*, the Supreme Court further explained that "[i]n both cases, the losing party in state court filed suit in federal court *after the*

*state proceedings ended*, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment." *Id.* at 284, 291 (emphasis added).

One year later, in *Lance*, the Supreme Court reiterated "the narrowness of the *Rooker-Feldman* rule." 546 U.S. at 464. The Court also retold the origins of the doctrine: "This Court is vested, under 28 U.S.C. § 1257, with jurisdiction over appeals from final state-court judgments. We have held that this grant of jurisdiction is exclusive: 'Review of such judgments may be had *only* in this Court.'" *Id.* at 463 (quoting *Feldman*, 460 U.S. at 482). Significantly, as the *Rooker-Feldman* doctrine stems from § 1257's exclusive grant of jurisdiction to the Supreme Court over appeals from "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had," 28 U.S.C. § 1257, the *Lance* Court explained that "under what has come to be known as the *Rooker-Feldman* doctrine, lower federal courts are precluded from exercising appellate jurisdiction over *final state-court judgments*," *Lance*, 546 U.S. at 463 (emphasis added); *see also Skinner v. Switzer*, 562 U.S. 521, 531–32 (2011) (explaining that both *Rooker* and *Feldman* fit the pattern of "[t]he losing party in state court filed suit in a U.S. District Court after the state proceedings ended," and that *Exxon* clarified that the *Rooker-Feldman* doctrine only applies in like cases).

The combination of *Exxon* and *Lance* ostensibly severely curtailed the lower federal courts' reliance on the *Rooker-Feldman* doctrine as a docket clearing device. In a dissent in *Lance* unrelated to the Court's disposition of the *Rooker-Feldman* issue, Justice Stevens explained that, in *Exxon*, "the Court finally interred the so-called '*Rooker-Feldman* doctrine,'" and that, in *Lance*, "the Court quite properly disapproves of the District Court's resuscitation of a doctrine that has produced nothing but mischief for 23 years." *Lance*, 546 U.S. at 468 (Stevens, J., dissenting). A mock obituary for *Rooker-Feldman* was even published by one scholar. *See* Samuel Bray, *Rooker-Feldman (1923–2006)*, 9 Green Bag 2d 317 (2006); *see also* Vladeck, *supra*, at 566 (characterizing *Exxon* and *Lance* as a "twin killing" of *Rooker-Feldman*).

**D.**

However, rather than heed the Supreme Court's efforts to reign in the *Rooker-Feldman* doctrine, lower courts, like the majority does today, have continued to invoke the doctrine.

"One empirical analysis suggests the doctrine proliferated even more after *Exxon Mobil*'s attempt to limit it." *VanderKodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397, 407 (6th Cir. 2020) (Sutton, J., concurring) (citing Raphael Graybill, Comment, *The Rook That Would Be King:* Rooker-Feldman *Abstention Analysis After* Saudi Basic, 32 Yale J. on Reg. 591, 591–92 (2015)). But one area where the circuit courts have consistently limited *Rooker-Feldman* post-*Exxon* and -*Lance* is on the issue of whether it applies to state court interlocutory orders.

Two months after the Supreme Court's unanimous decision in *Exxon*, in *Federación de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico*, the First Circuit decided whether the *Rooker-Feldman* doctrine applies to state court interlocutory orders.[1] *See* 410 F.3d 17, 19 (1st Cir. 2005). The First Circuit explained that "*Exxon Mobil* tells us when a state court judgment is sufficiently final for operation of the *Rooker-Feldman* doctrine: when 'the state proceedings [have] ended.'" *Id.* at 24 (quoting *Exxon*, 544 U.S. at 291). As to when a state proceeding has "ended," the First Circuit provided three exclusive situations. *Id.* (quoting *Exxon*, 544 U.S. at 291). "First, when the highest state court in which review is available has affirmed the judgment below and nothing is left to be resolved, then without a doubt the state proceedings have 'ended.'" *Id.* (quoting *Exxon*, 544 U.S. at 291). "Second, if the state action has reached a point where neither party seeks further action"—for example, if "the losing party allows the time for appeal to expire" or if the parties voluntarily terminate the litigation—"then the state proceedings have also 'ended.'" (quoting *Exxon*, 544 U.S. at 291). "Third, if the state court proceedings have finally resolved all the federal questions in the litigation, but state law or purely factual questions (whether great or small) remain to be litigated, then the state proceedings have 'ended' within the meaning of *Rooker-Feldman* on the federal questions at issue." *Id.* at 25 (quoting *Exxon*, 544 U.S. at 291).

In other words, the First Circuit's test looks to whether the state court judgment at issue was "effectively final." *Malhan v. Sec'y United States Dep't of State*, 938 F.3d 453, 459 (3d Cir. 2019). If so, "then a federal suit seeking an opposite result is an impermissible attempt to appeal the state judgment to the lower federal courts, and, under *Rooker-Feldman*, the federal courts lack jurisdiction." *Federación*, 410 F.3d at 24. But outside of the three limited situations where

---

[1]*Federación* itself concerned an interlocutory decision by a Puerto Rican appellate court.

the First Circuit considered "the state proceedings [to have] ended," the First Circuit explained that "even if the federal plaintiff expects to lose in state court and hopes to win in federal court— the litigation is parallel, and the *Rooker-Feldman* doctrine does not deprive the court of jurisdiction." *Id.* (quoting *Exxon*, 544 U.S. at 291–293).

Following the First Circuit's lead, the Second, Third, Fourth, Fifth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits all subsequently held that, post-*Exxon*, the *Rooker-Feldman* doctrine does not ordinarily apply to state court interlocutory orders.[2]  *See Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 89 (2d Cir. 2005); *Malhan*, 938 F.3d at 459–460; *Hulsey v. Cisa*, 947 F.3d 246, 250 (4th Cir. 2020) ("[T]he [*Rooker-Feldman*] doctrine simply precludes federal district courts from exercising what would be, in substance, appellate jurisdiction over final state-court judgments."); *Thana v. Bd. of License Commissioners for Charles Cnty., Maryland*, 827 F.3d 314, 321 (4th Cir. 2016) (explaining that the *Rooker-Feldman* doctrine "does not apply here because the district court here was not called upon to exercise appellate jurisdiction over a final judgment from 'the highest court of a State in which a decision could be had,' as was the case in both *Rooker* and *Feldman*." (quoting 28 U.S.C. § 1257(a))); *Burciaga v. Deutsche Bank Nat'l Tr. Co.*, 871 F.3d 380, 384 (5th Cir. 2017) (explaining that the *Rooker-Feldman* doctrine "applies only to 'final judgment[s] rendered by a state's court of last resort.'" (quoting *Illinois Cent. R. Co. v. Guy*, 682 F.3d 381, 390 (5th Cir. 2012)));[3]  *Bauer v. Koester*, 951 F.3d 863, 867 (7th Cir. 2020) ("The Bauers' argument fails because the record shows that the foreclosure case against them is effectively final.");[4]  *Dornheim v. Sholes*,

---

[2]"Since *Exxon Mobil*, the D.C. Circuit has not considered whether the *Rooker-Feldman* doctrine bars lower federal courts" from "review of interlocutory orders from state courts." *William Penn Apartments v. D.C. Ct. of Appeals*, 39 F. Supp. 3d 11, 18 (D.D.C. 2014).  It is worth noting, however, that at least one district court within the District of Columbia has adopted "the *Federación* analysis" and held "that the *Rooker-Feldman* doctrine applies only to cases where the state proceedings have ended." *Id.* at 17–18.

[3]Although the Fifth Circuit in *Burciaga* nonetheless declined to overrule pre-*Exxon* precedent, relied upon by the majority, "suggest[ing] that a state court judgment need not be issued by a court of last resort for *Rooker-Feldman* to apply," the court unequivocally held that *Rooker-Feldman* does not bar federal review of lower state court interlocutory orders.  871 F.3d at 384 n.5, 385, 387 ("[B]ecause the Vacating Order was not final when the federal suit was brought . . . , the *Rooker-Feldman* doctrine does not bar federal court review of it.").

[4]While the majority relies on *Harold v. Steel*, 773 F.3d 884 (7th Cir. 2014), as evidence that the Seventh Circuit has "split on the *Pieper* issue," Maj. Op. at 13, *Harold* explicitly did not "resolve the question," 773 F.3d at 886.  And while *Sykes v. Cook Cnty. Cir. Ct. Prob. Div.*, 837 F.3d 736 (7th Cir. 2016), relied on *Harold* for the

430 F.3d 919, 924 (8th Cir. 2005); *Robins v. Ritchie*, 631 F.3d 919, 926–28 (8th Cir. 2011);[5] *Mothershed v. Justices of Supreme Court*, 410 F.3d 602, 604 n.1 (9th Cir. 2005), *as amended on denial of reh'g*, 2005 WL 1692466 (9th Cir. July 21, 2005);[6] *Guttman v. Khalsa*, 446 F.3d 1027, 1032 & n.2 (10th Cir. 2006); *Nicholson v. Shafe*, 558 F.3d 1266, 1274–76, 1279 (11th Cir. 2009). Moreover, the First, Second, Third, Tenth, and Eleventh Circuits all explicitly overturned inconsistent pre-*Exxon* circuit precedent. *See Federación*, 410 F.3d at 27–28; *Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009); *Malhan*, 938 F.3d at 458–59; *Guttman*, 446 F.3d at 1031; *Nicholson*, 558 F.3d at 1274.

## II.

### A.

Until today, we were not an outlier from the ten other circuits that have held that state court interlocutory orders do not generally implicate the *Rooker-Feldman* doctrine. In *Quality Associates, Inc. v. The Procter & Gamble Distrib. LLC*, in an opinion authored by the same judge who authored *Pieper*, we repudiated *Pieper* because, in *Exxon*, "the Supreme Court 'confined' the application of the *Rooker-Feldman* doctrine to cases resembling *Rooker* and

---

proposition that "interlocutory orders entered prior to the final disposition of state court lawsuits are not immune from the jurisdiction-stripping powers of *Rooker-Feldman*," *id.* at 742, later Seventh Circuit cases clarified that the *Rooker-Feldman* doctrine "does not apply independently to interlocutory orders," *Kowalski v. Boliker*, 893 F.3d 987, 995 (7th Cir. 2018), unless the order is "effectively final," *Bauer*, 951 F.3d at 867 (citing *Malhan*'s agreement "with the holding of six other circuits that there is a state-court 'judgment' under *Rooker-Feldman*, even in the absence of a final appealable order so long as the state-court interlocutory order is 'effectively final.'"). Thus, what the majority asserts is a "variety of approaches," Maj. Op. at 13, is merely the singular "effectively final" approach first articulated by the First Circuit in *Federación*. Ordinarily, *Rooker-Feldman* "does not apply independently to interlocutory orders," *Kowalski*, 893 F.3d at 995, but "interlocutory orders entered prior to the final disposition of state court lawsuits are not immune from the jurisdiction-stripping powers of *Rooker-Feldman*," *Sykes*, 837 F.3d at 742, because *Rooker-Feldman* does apply to such orders when they are "effectively final," *Bauer*, 951 F.3d at 867.

[5]The majority correctly notes that a recent Eighth Circuit case "concluded that *Rooker-Feldman* applies to state court judgments that are not yet final." *Parker Law Firm v. Travelers Indem. Co.*, 985 F.3d 579, 584 (8th Cir. 2021). But *Parker* relied exclusively on two pre-*Exxon* cases (including *Pieper*), did not consider *Exxon*'s impact on those cases, and, most importantly, failed to mention earlier binding circuit precedent holding "that for the purposes of *Rooker-Feldman* a state court renders judgment on the date the state court 'finally resolves' the claims before it." *Robins*, 631 F.3d at 928; *see also Dornheim,* 430 F.3d at 924.

[6]Seeking to create a veneer of non-unanimity, the majority points to an unpublished Ninth Circuit memorandum that quoted a pre-*Exxon* case for the proposition that *Rooker-Feldman* applies to "interlocutory state court decisions." *Santos v. Superior Ct. of Guam*, 711 F. App'x 419, 420 (9th Cir. 2018) (memorandum) (quoting *Doe & Assocs. Law Offices v. Napolitano*, 252 F.3d 1026, 1030 (9th Cir. 2001)). But, as noted above, published Ninth Circuit precedent holds otherwise. *See Mothershed*, 410 F.3d at 604 n.1.

*Feldman* where the 'state proceedings [have] ended.'" 949 F.3d 283, 290 n.5 (6th Cir. 2020) (quoting *Nicholson*, 558 F.3d at 1277); *see also Veasley v. Fed. Nat. Mortg. Ass'n (FNMA)*, 623 F. App'x 290, 294 (6th Cir. 2015) ("*Exxon Mobil* instructs us that a state court judgment is sufficiently final when 'the state proceedings [have] ended.'" (quoting *Exxon*, 544 U.S. at 291)); *Shafizadeh v. Bowles*, 476 F. App'x 71, 72 (6th Cir. 2012) ("In *Exxon Mobil*, the Court emphasized that *Rooker-Feldman* is 'confined to cases' like *Rooker* and *Feldman* themselves, where the plaintiffs 'filed suit in federal court after the state proceedings ended.'" (quoting *Exxon*, 544 U.S. at 284, 291)).

**B.**

But today, the majority casts aside the relevant discussion in *Quality Associates* as dicta, ignores the Supreme Court's "warn[ing] that the lower courts have at times extended *Rooker-Feldman* 'far beyond the contours of the *Rooker* and *Feldman* cases,'" *Lance*, 546 U.S. at 464 (quoting *Exxon*, 544 U.S. at 283), and creates a circuit split by incorrectly holding that "[u]nder *Rooker-Feldman*—even after *Exxon*—federal district courts don't have jurisdiction over appeals of interlocutory state-court orders," Maj. Op. at 19. However, *Exxon* and *Lance* require that this Court overrule *Pieper* and hold that the *Rooker-Feldman* doctrine does not apply to nonfinal state court interlocutory orders.

As explained above, § 1257 provides that only the Supreme Court has appellate jurisdiction over "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had." 28 U.S.C. § 1257. From the negative implication of § 1257—that lower federal courts lack appellate jurisdiction over such final judgments—the *Rooker-Feldman* doctrine was birthed. By its terms, however, *Rooker-Feldman* cannot apply to interlocutory orders. After all, § 1257 is a grant of appellate jurisdiction over final judgments from a state's highest court. Without such a final judgment, § 1257 is simply not implicated. Instead, in the absence of a final judgment from a state's highest court, even if a state court has entered an interlocutory order before the initiation of the federal suit, so long as the federal court is "empowered to adjudicate" the action "under a congressional grant of authority, *e.g.*, § 1330 (suits against foreign states), § 1331 (federal question), and § 1332 (diversity)," *Exxon*, 544 U.S. at 291, "the pendency of an action in the state court is no bar to proceedings concerning the same

matter in the Federal court . . . ," *McClellan*, 217 U.S. at 282; *see also Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013). And in situations of "state-federal concurrent jurisdiction" the federal district courts have a "virtually unflagging obligation" to exercise jurisdiction. *Colorado River*, 424 U.S. at 817.

While the rationale underlying the *Rooker-Feldman* doctrine makes it clear that a nonfinal lower state court order cannot divest lower federal courts of jurisdiction, pre-*Exxon*, this Court was not alone in holding otherwise. *See Pieper*, 336 F.3d at 462–63 (collecting cases). But, in *Exxon* and *Lance*, the Supreme Court reiterated that *Rooker-Feldman* stems from § 1257's limitation on the jurisdiction of the lower federal courts and established that the doctrine only applies when a lower federal court is faced with the same situation as in *Rooker* and *Feldman*: an appeal from a state court final judgment filed in federal district court. After highlighting *Rooker-Feldman*'s roots in § 1257, the *Exxon* Court emphasized that in both *Rooker* and *Feldman* "the losing party in state court filed suit in federal court after the state proceedings ended," 544 U.S. at 291, and the *Lance* Court defined the *Rooker-Feldman* doctrine as, "lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments,"[7] 546 U.S. at 463; *see also Skinner*, 562 U.S. at 531–32. These "inconsistent decision[s] of the United States Supreme Court require[] modification of" *Pieper*. *Elbe*, 774 F.3d at 891 (quoting *Salmi*, 774 F.2d at 689).

## C.

The majority nonetheless asserts that the "language" from *Exxon* is not "compelling, at least so far as to *mandate* a finality requirement" because "[t]he finality of the state-court proceedings was not critical to the outcome in *Exxon*." Maj. Op. at 15–16. However, as explained at length above, critical to both *Exxon* and *Lance* was the imperative to confine the

---

[7]Because there is no argument that the state court interlocutory order here was "effectively final," *Malhan*, 938 F.3d at 459; *see also Federación*, 410 F.3d at 24, I would leave to another day the question of whether *Rooker-Feldman* applies in such circumstances, *see Veasley*, 623 F. App'x at 294 (explaining that "the Sixth Circuit has yet to adopt a clear principle for determining when a state court decision is final for the purposes of the *Rooker-Feldman* doctrine" but relying on part of the *Federación* test), or whether the doctrine only applies when a district court is "called upon to exercise appellate jurisdiction over a final judgment from 'the highest court of a State in which a decision could be had,' as was the case in both *Rooker* and *Feldman*," *Thana*, 827 F.3d at 321 (quoting 28 U.S.C. § 1257(a)).

*Rooker-Feldman* doctrine to its roots as a means of enforcing Congress's exclusive grant of appellate jurisdiction to the United States Supreme Court over "[*f*]*inal judgments or decrees rendered by the highest court of a State in which a decision could be had.*"  28 U.S.C. § 1257 (emphasis added).

The majority also suggests that *Lance* did not mean what it said when it held that, under "the *Rooker-Feldman* doctrine, lower federal courts are precluded from exercising appellate jurisdiction over *final state-court judgments*."  546 U.S. at 463 (emphasis added).  According to the majority, "*Lance* simply does not address the question whether *Rooker-Feldman* bars de facto appeals from interlocutory state-court orders."  Maj. Op. at 17.  In support, the majority seizes upon both a statement in *Lance* explaining that *Rooker-Feldman* "applies only in 'limited circumstances,' where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court," and a reference to "a *de facto* appeal."  *Id.* at 466 & n.2 (quoting *Exxon*, 544 U.S. at 291).  However, the words "in effect" and "*de facto* appeal" merely describe a situation in which *Rooker-Feldman* may be implicated.  *Rooker-Feldman* does not require that the plaintiff file a notice of appeal from the state court's judgment in the district court.  Nor does it require that the complaint hold itself out as appealing the state court judgment.  Instead, even when the plaintiff explicitly seeks to invoke the district court's original jurisdiction, in certain "limited circumstances," namely, when the plaintiff is "the losing party in state court" who "filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment," *Exxon*, 544 U.S. at 291, under *Rooker-Feldman*, the plaintiff is deemed to have "in effect" sought "to take an appeal of an unfavorable state-court decision to a lower federal court," or "a *de facto* appeal," *Lance*, 546 U.S. at 466 & n.2; *see also* Maj. Op. at 14 (describing the litigation in this case as a "covert appeal").  Nothing about the phrases "in effect" or "*de facto*" indicate an intent by the *Lance* Court to somehow cabin its holding that the *Rooker-Feldman* doctrine precludes "lower federal courts . . . from exercising appellate jurisdiction over *final state-court judgments*."  546 U.S. at 463 (emphasis added).

Moreover, the majority's treatment of *Lance* is striking in light of its reliance on our decision in *McCormick v. Braverman*, 451 F.3d 382 (6th Cir. 2006).  Immediately after excising

*Lance*'s holding that "lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments," 546 U.S. at 463, the majority asserts that our decision in *McCormick* supports its novel holding that, post-*Exxon* and *-Lance*, *Rooker-Feldman* applies to all state court interlocutory orders.  However, while *McCormick* appeared to concern an interlocutory state court order, we never engaged with the interlocutory nature of the state court order, discussed *Exxon*'s holding that *Rooker-Feldman* only applies when "the losing party in state court filed suit in federal court after the state proceedings ended," 544 U.S. at 291, or even cited *Pieper*.  Thus, while, on the one hand, the majority (incorrectly) rejects *Lance*'s holding on the grounds that "*Lance* simply does not address the question whether *Rooker-Feldman* bars de facto appeals from interlocutory state-court orders," on the other hand, the majority relies on *McCormick* even though "[*McCormick*] simply does not address the question whether *Rooker-Feldman* bars de facto appeals from interlocutory state-court orders."  Maj. Op. at 17.

The majority's decision to read into *McCormick* a holding that is completely absent from the opinion is particularly odd in light of its decision to dismiss as dicta our recognition in *Quality Associates* that *Exxon* "displaced" *Pieper* and that "the Supreme Court 'confined' the application of the *Rooker-Feldman* doctrine to cases resembling *Rooker* and *Feldman* where the 'state proceedings [have] ended.'" 949 F.3d at 290 n.5 (quoting *Nicholson*, 558 F.3d at 1277); *see also Veasley*, 623 F. App'x at 294; *Shafizadeh*, 476 F. App'x at 72.  In other words, notwithstanding *Quality Associates*' alignment with § 1257, *Exxon*, *Lance*, and the considered opinions of ten other circuits, the majority improperly reconfigures *McCormick* to support its conclusion and, in the process, elevates an imaginary holding over our published opinion in *Quality Associates* recognizing that *Pieper* has been "displaced" by *Exxon*.  *Id.*

## III.

Much of the majority opinion appears to be motivated by a concern that litigants like RLR will rush to federal court after an adverse state court interlocutory order and seek a contrary judgment in federal court.  As an initial matter, such policy concerns are irrelevant to this Court's exercise of jurisdiction.  As explained above, federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them," *Colorado River*, 424 U.S. at 817, and

Congress has provided for concurrent federal court and state court jurisdiction, *see McClellan*, 217 U.S. at 282.

Moreover, in *Exxon*, the Supreme Court explicitly explained that § 1257 (and, by extension, *Rooker-Feldman*) does not "stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court." 544 U.S. at 293; *but see* Maj. Op. at 17 ("RLR lost in state court and, dissatisfied with the result, asked the district court to come to the opposite conclusion and undo the state court's Order. That's not parallel litigation."). Rather, in such situations, ordinary preclusion law governs. *See id.* And because the "Full Faith and Credit Act, 28 U.S.C. § 1738 . . . requires the federal court to 'give the same preclusive effect to a state-court judgment as another court of that State would give[,] . . . [i]n parallel litigation, a federal court may be bound to recognize the claim- and issue-preclusive effects of a state-court judgment, but federal jurisdiction over an action does not terminate automatically on the entry of judgment in the state court." *Id.* (quoting *Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518, 523 (1986)); *see also Lance*, 546 U.S. at 466 ("A more expansive *Rooker-Feldman* rule would tend to supplant Congress' mandate, under the Full Faith and Credit Act, 28 U.S.C. § 1738, that federal courts 'give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged.'" (quoting *Baker v. General Motors Corp.*, 522 U.S. 222, 246 (1998) (Kennedy, J., concurring))).

Furthermore, when a litigant files suit in federal court before the state court in the parallel proceeding enters a judgment that carries preclusive effects, the federal courts have tools at their disposal to ensure that judicial resources are not wasted. For example, under the doctrine of *Colorado River* abstention—which the City raised as an alternative argument in its motion to dismiss—"a federal district court may abstain from exercising its subject matter jurisdiction due to the existence of a concurrent state court proceeding, based on 'considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 206 (6th Cir. 2001) (quoting *Colorado River*, 424 U.S. at 817). And where, as here, the parallel state court proceedings are far enough along that the state court issued an interlocutory order on the merits

before the federal action was filed, several of the *Colorado River* factors tilt heavily in favor of the federal court abstaining. *See Romine v. Compuserve Corp.*, 160 F.3d 337, 340 (6th Cir. 1998) (explaining that "in deciding whether to defer to the concurrent jurisdiction of a state court, a district court must consider such factors as" the "avoidance of piecemeal litigation;" "the order in which jurisdiction was obtained;" and "the relative progress of the state and federal proceedings."); *see also D.A. Osguthorpe Fam. P'ship v. ASC Utah, Inc.*, 705 F.3d 1223, 1226, 1232, 1236 (10th Cir. 2013) (affirming the district court's abstention under the *Colorado River* doctrine after concluding that *Rooker-Feldman* was not applicable because the state court order at issue was not final). Significantly, "[s]tay orders based on *Colorado River* effectively end the litigation in federal court, 'because the district court would be bound, as a matter of res judicata, to honor the state court's judgment.'" *RSM Richter, Inc. v. Behr Am., Inc.*, 729 F.3d 553, 556 (6th Cir. 2013) (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 713 (1996)); *see also Exxon*, 544 U.S. at 293. Thus, in addition to § 1257, *Exxon*, and *Lance*, all making it clear that *Rooker-Feldman* does not apply to nonfinal state court interlocutory orders, there is no underlying policy reason necessitating the application of *Rooker-Feldman* to such state court orders.

\*\*\*

In sum, *Pieper*'s holding "that the *Rooker-Feldman* doctrine does apply to interlocutory orders and to orders of lower state courts" is no longer tenable post-*Exxon* and -*Lance*. 336 F.3d at 462. In line with every other circuit to have fully considered this issue, *Exxon* and *Lance* require this Court to modify *Pieper* and hold that *Rooker-Feldman* does not apply to nonfinal state court judgments. *See Quality Associates*, 949 F.3d at 290 n.5 (explaining that *Exxon* "displaced" *Pieper*). Because the majority concludes otherwise, and accordingly affirms the district court's holding that it lacked jurisdiction under *Rooker-Feldman*, I respectfully dissent.